**S T A T E   O F   M I C H I G A N**
**C O U R T   O F   A P P E A L S**

JAMES O'NEILL, EDWARD VERDINO, and
LEIGH VERDINO,

   Plaintiffs/Counter-Defendants-
   Appellees,

v

KATHERINE SLONINA, Trustee of the HENRY
R. SLONINA AND PATRICIA J. SLONINA
LIVING TRUST,

   Defendants/counter-Plaintiff-
   Appellant

and

JANICE A. MOSES, EDWARD R. HAGAN,
Trustee of the HAGAN FAMILY TRUST,
DARLA L. HAGAN, Trustee of the HAGAN
FAMILY TRUST, and JOSEPHINE CHIKKO, *et
al.*,

   Defendants/Counter-Plaintiffs,

and

HENRY R. SLONINA, Trustee of the HENRY R.
SLONINA AND PATRICIA J. SLONINA
TRUST, *et al.*,

   Defendants.

UNPUBLISHED
October 25, 2016

No.   329227
Van Buren Circuit Court
LC No.   13-630290-CZ

JANICE A. MOSES,

   Plaintiff-Appellant,

v

JAMES O'NEILL, EDWARD VERDINO, and
LEIGH VERDINO,

No.   329475
Van Buren Circuit Court
LC No.   14-640131-CZ

-1-

Defendants-Appellees.

JAMES O'NEILL, EDWARD VERDINO, and
LEIGH VERDINO,

        Plaintiffs/counter-Defendants-
        Appellees,

v

JANICE A. MOSES, EDWARD R. HAGAN,
Trustee to the HAGAN FAMILY TRUST,
DARLA L. HAGAN, Trustee to the HAGAN
FAMILY TRUST, and JOSEPHINE CHIKKO,

        Defendants/Counter-Plaintiffs-
        Appellants,
and

KATHERINE SLONINA, Trustee of the HENRY
R. SLONINA AND PATRICIA J. SLONINA
LIVING TRUST,

        Defendants/Counter-Plaintiffs,
and

HENRY R. SLONINA, Trustee of the HENRY R.
SLONINA AND PATRICIA J. SLONINA
TRUST, *et al.*,

        Defendants.

No. 330527
Van Buren Circuit Court
LC No. 13-630290-CZ

JANICE A. MOSES,

        Plaintiff-Appellant,

v

JAMES O'NEILL, EDWARD VERDINO, and
LEIGH VERDINO,

        Defendants-Appellees.

No. 330529
Van Buren Circuit Court
LC No. 13-640131-CZ

Before: K. F. KELLY, P.J., and O'CONNELL and BOONSTRA, JJ.

-2-

PER CURIAM.

Seven trial court orders are challenged in this consolidated appeal in a case involving the scope of a dedication and the rights of lakefront and back-lot owners to property lying between a road and a lake. The first order granted partial declaratory judgment in favor of plaintiffs (lakefront owners) and against the defendants (back-lot owners) regarding the scope of usage rights under a dedication. The second order denied defendants' motion to adjourn hearing on plaintiffs' motion for summary disposition as well as defendants' second motion to amend counter-complaint and affirmative defenses. The third order denied defendants' motion to disqualify Judge Dodge. The fourth order dismissed defendants' counter-complaint. The fifth order was entered by a judge who heard defendants' appeal from the motion to disqualify Judge Dodge. The sixth order was identical to the order granting partial declaratory judgment in favor of plaintiffs as to other defendants. Finally, the seventh order granted a motion to quash a subpoena to nonparty. We affirm in part, vacate in part, and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

These cases involve a dispute over the use of 149.2 feet of beach on Shafer Lake in the Beechwood Terrace subdivision in Van Buren County. The land lies along the western edge of a platted easement referred to as Lake Avenue, which purportedly runs to the lake's edge and then curves north and runs parallel to the lake into the next subdivision. The dedication specifically provides:

> Know all men by these presents, that we, Walter Kozelink and Evelyn Kozelink, husband and wife, as proprietors, have caused the land embraced in the annexed plat to be surveyed, layed [sic] out and platted, to be known as Beechwood Terrace in the South half of the Southwest fraction quarter of Section 19, Town 3 South, Range 15 West, Lawrence Township, Van Buren County, Michigan, and that the avenues are hereby dedicated to the use of the owners of lots in said subdivision and property lying North thereof. Lots 1 to 16 inclusive, and Lake Ave. extend to Lake.

James O'Neill purchased lots 28 and 29 in 1987 and Edward and Leigh Verdino purchased lots 15 and 16 in 1995.

On June 18, 2013, O'Neill and the Verdinos sued a number of their "back lot" neighbors: Janice A. Moses, Edward and Darla Hagan as trustees for the Hagan Family Trust, Andrew and Mary Eileen Webber, Josephine Chikko, Katrin Owen, Tammy Wilson, and Sally J. Brueck. Plaintiffs alleged that they were riparian owners and that defendants were using Lake Avenue in a manner that exceeded the scope of the dedication. Plaintiffs did not contest defendants' right under the dedication to use Lake Avenue for travel purposes, walking, fishing, swimming and accessing the lake. However, plaintiffs maintained that defendants' use of Lake Avenue to dock and moor boats overnight and seasonally exceeded the scope of the dedication. Regardless of whether Lake Avenue was considered a "road end" or a "parallel road," plaintiffs alleged that defendants had no right to place docks or hoists at Lake Avenue and had no right to permanently store their boats there.

The named defendants filed a motion to dismiss the complaint based on plaintiffs' failure to include all necessary parties. Defendants believed that plaintiffs were required to include *all* owners in the subdivision and the trial court agreed. Thereafter, plaintiffs filed a first amended complaint, adding the remaining property owners and keeping the allegations as previously alleged. John C. Spink as trustee of the John W. Spink Trust answered separately and filed a counterclaim. Rhonda R. Shine (formerly known as Rhonda R. Wilbur) answered separately. The remaining defendants either defaulted or were represented by Attorney Matthew DePerno.

In the meantime, on April 11, 2014, numerous defendants filed a separate action. Although technically considered "plaintiffs" in the new action, we will continue to refer to them as "defendants" to avoid confusion. This new complaint alleged that the original plaintiffs were attempting to unlawfully exercise ownership and control over Lake Avenue. The two actions were ultimately consolidated, with the matter being bifurcated so that all equitable actions would be heard by the judge during "Phase I" and any claim for monetary damage would be considered during "Phase II," if necessary.

On June 3, 2014, Judge Dufon granted plaintiffs' motion to compel discovery and further ordered defendants to pay costs based on defendants' failure to properly answer interrogatories. Defendants later sought clarification of that order. A hearing was held on June 24, 2014, at which time Judge Dufon granted plaintiffs' request for attorney fees in light of the fact that DePerno admitted that the answers had already been prepared and that there was no need to appear at the hearing. Thereafter, DePerno filed a motion for disqualification, claiming that Judge Dufon showed personal bias by "consistently rul[ing] in favor of Plaintiffs . . ." DePerno alleged that Judge Dufon's friend and his secretary were embroiled in a federal RICO case in which defense counsel might be called as a witness. Judge Dufon denied DePerno's motion, finding the allegations "baseless," "without merit," and untimely, noting that "it certainly appears that there was something that was kept in his back pocket in case things didn't appear to be going how he wanted . . ." Nevertheless, given the fact that Judge Dufon's staff was involved, there was the appearance of impropriety, so he disqualified himself.

The matter was assigned to Judge Dodge from Cass Circuit Court. Judge Dodge ordered the matter to mediation, which was unsuccessful. Defendants then filed a motion to amend their pleadings to include a claim of express easement or easement by prescription. Defendants also requested the opportunity to add a claim for declaratory judgment that Chikko, who owned Lot 30 was a riparian owner.

A hearing on various motions was held on November 17, 2014. Judge Dodge granted plaintiffs' motion to extend discovery and compel depositions, also granting attorney fees in connection with the motion to compel. As for defendants' motion to amend, Judge Dodge noted that "this motion is untimely; it's too late. There's no proposed Counter-Complaint that's been attached along with it for the Court to review."

A hearing on various motions was held on December 4, 2014. Judge Dodge declined defendants' motion to set aside any of Judge Dufon's prior orders. Judge Dodge noted that the case had spun out of control and that he wanted to limit discovery and ensure that it was not excessive or burdensome. Plaintiff had filed a protective order, alleging that defendants' interrogatories were excessive. DePerno maintained that he had merely repackaged plaintiffs' own interrogatories and that what was good for the goose was good for the gander. Judge Dodge

-4-

disagreed. In an effort to control discovery, Judge Dodge summarily denied the competing motions to compel and granted the protective orders. Each side was given an opportunity to submit 50 additional interrogatories by December 31, 2014, to be answered within 14 days. Written discovery would be deemed closed and discovery as to depositions would remain open. Judge Dodge entered several orders to reflect his previous rulings: (1) granting plaintiffs' renewed motion to compel discovery from June 3, 2014; (2) denying defendants' motion for clarification from June 24, 2014; (3) granting plaintiffs' motion to compel discovery from April 21, 2014; and (4) denying the competing motions to compel and granting the protective orders.

Defendants filed motions for reconsideration as well as a second motion to amend the counter complaint and affirmative defenses. Defendants also filed a motion to adjourn the hearing on plaintiffs' imminent motion for summary disposition. The motions to amend and adjourn were heard on January 12, 2015. Defense counsel argued that plaintiffs' motion for summary disposition was premature because plaintiffs' had not yet been deposed. Judge Dodge denied defendants' motion to adjourn, finding that there was nothing to prevent plaintiffs from moving for summary disposition prior to close of discovery. Judge Dodge then went on to deny defendants' second motion to amend the pleadings, finding it to be merely a motion for reconsideration.

Plaintiffs had moved for partial summary disposition as to Counts I (declaratory relief that defendants' use exceeds the scope of the dedication) and II (declaratory judgment that O'Neill's property is riparian) of their amended complaint. Plaintiffs acknowledged that there has always been a pier at the Lake Avenue waterfront that was meant for swimming and fishing – essentially, to enable "day use" activities. Plaintiffs claimed that in the late 1990's and especially in the 2000's backlot owners began keeping boats and watercraft along Lake Avenue overnight or seasonally in violation of the dedication. Plaintiffs noted that the plat clearly indicates that Lake Avenue extends to the lake and was, therefore, a road end but, even if it was considered a parallel road, the result would be the same: backlot owners are not entitled to permanent, seasonal or overnight mooring or docking, nor are they entitled to install docks or hoists. Plaintiffs argued that historical usage was irrelevant because the plat dedication was unambiguous and needed no interpretation through extrinsic evidence. Moreover, defendants were precluded from pointing to such evidence to prove a prescriptive easement where defendants failed to plead a prescriptive easement. As far as O'Neill's alleged riparian rights, plaintiffs acknowledged that his lots did not have direct frontage on the lake. Nevertheless, plaintiffs argued that he had a first-tier platted lot that extended under and through the parallel portion of Lake Avenue.

Defendants responded that plaintiffs' motion for partial summary disposition was premature and that it would be erroneous for the trial court to grant plaintiffs summary disposition without allowing defendants an opportunity to amend their pleadings. Defendants argued that plaintiffs were estopped from pursing their claim because defendants have consistently and continuously used the beach area for permanent, seasonal or overnight boat moorage, storage, anchorage, and dockage. Defendants believed that scope of the dedication must be gleaned from the language and the surrounding circumstances. They further argued that "decades of continuous use of the docks and the mooring of watercraft by Defendants and their predecessors in title established an easement by prescription." Defendants supported their response with numerous affidavits of backlot owners regarding the historical use of the "beach"

and the platters' intent. Defendants argued that they were entitled to summary disposition under MCR 2.116(C)(I)(2).

A hearing on the motion for summary disposition was held on January 26, 2015. At that time, defense counsel denied that a claim for prescriptive easement was not pleaded and the affirmative defense of statute of limitations clearly implicated a defense of prescriptive easement. Judge Dodge nevertheless granted plaintiffs partial summary disposition:

> Even though this case has gone on, it will be two years in June, and I guess I'm the fifth Judge on this case, and we have over twenty volumes of court files, the legal issues presented are not uncommon. I've been on the Bench for a long time, we've got a lot of lakes in our county, and I've seen this issue come up numerous times in the past. So, it's not unfamiliar to the Court. I've had to rule on this legal issue many times in the past, and as Mr. Bloom correctly points out, the critical element here is the dedication; what does the dedication say, and the dedication in the present case is clear and unambiguous by use of the language, "for the use of." That language, "for the use of members of the Plat," means something very specific; it is a right of ingress and egress, access to a navigable body of water. In this case, the Shafer Lake involved here, it means the right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. Lounging, sunbathing, picnicking, and the erection of boat hoists or seasonal docks are beyond the scope of such a dedication. Boats may be moored temporarily as an incident of the public's right of navigation. Private docks, which are an incident of riparian ownership, are not permitted.

> . . .The fact of the matter is that the grantor's intent here is clear from the language of the dedication, and extrinsic evidence is not relevant, nor is subsequent historical use relevant because the legal issue is clear.

> The Court finds that there is a failure to state a valid defense to the Plaintiff's claims in Counts I and II, and there is no genuine issue as to any material fact with respect to those claims advanced in Counts I and II, and the Plaintiff's argument is absolutely correct; it's a correct statement of the law in the State of Michigan. As a result of that controlling case law, the Court does grant the Plaintiff's motion for partial summary disposition on Counts I and II, and I deny the Defendant's [sic] motion for summary disposition as argued pursuant to 2.116(I)(2) . .

On February 9, 2015, defendants filed a motion to disqualify Judge Dodge. Defendants alleged:

> In this case, Judge Dodge has demonstrated a clear personal bias in favor of his [sic] the Plaintiffs and against the Defendants and their attorney. Judge Dodge has consistently ruled in favor of the Plaintiffs[.] But more importantly, Judge Dodge failed to disclose his relationship with Attorney Bloom. Judge Dodge also failed to disclose that he owns property on Eagle Lake, as a riparian owner, and has been involved in two separate lawsuits involving lake access and riparian rights in which Attorney Bloom has represented his interests through the

Eagle Lake Improvement Association . . . Judge Dodge has a clear bias against "backlot" owner[s] or others attempting to gain access to the lake when they don't own property on the lakeshore.

Judge Dodge denied the motion for disqualification, indicating that he was neither actually biased nor was there the appearance of impropriety. Defendants then challenged the motion for disqualification. SCAO assigned Kent Circuit Court Judge Donald A. Johnston to hear the appeal. A de novo hearing was held on May 11, 2015. Judge Johnston entered an order denying defendants' motion for disqualification.

In the meantime, on March 5, 2015, Judge Dodge entered an order granting plaintiffs partial summary disposition. The trial court also entered an order denying defendants' motion to adjourn the hearing on plaintiffs' motion for summary disposition as well as defendants' motion for reconsideration regarding the motion to amend and defendants' motion for reconsideration regarding the award of costs and attorney fees. The trial court also entered orders denying defendants' motions for reconsideration.

Judge Dodge entered an order granting plaintiffs' motion to voluntarily dismiss the remainder of the amended complaint without prejudice. The parties also entered into a partial consent judgment dismissing defendants' claims. Judge Dodge granted summary disposition as to Spink and default judgment as to previously defaulted defendants. He later granted summary disposition as to Shine. Weirman signed a consent judgment.

On June 25, 2015, the trial court granted plaintiffs' motion to quash defendants' subpoena to nonparty Eagle Association. The order contained the following language: "this Order constitutes a final order that resolves the last pending issue in this consolidated case and closes the case."

Defendants filed a claim of appeal on July 16, 2015. However, the appeal was dismissed for lack of jurisdiction because the trial court's June 25, 2015 order did not constitute a final order appealable by right since it did not dispose of any claim; it merely quashed a subpoena. Defendants were advised that they could seek delayed application to appeal the July 1, 2015 order. *O'Neill v Moses*, unpublished order of the Court of Appeals, entered August 12, 2015 (Docket Nos. 328367 and 328375), recon den November 13, 2015.

This Court later granted delayed application for leave to appeal to the Slonina Living Trust, represented by DePerno. *O'Neill v Moses*, unpublished order of the Court of Appeals, entered December 16, 2015 (Docket Nos. 329227 and 329475). The Court also granted delayed application for leave to appeal to Moses, the Hagan Family Trust, and Chikko, now represented by attorney Ronald Redick. *O'Neill v Moses*, unpublished order of the Court of Appeals, entered January 6, 2016 (Docket Nos. 330527 and 330529). All four cases have been consolidated. We will continue to use the generic term "defendants" to refer to all of the appellants, except in those instances where the arguments are nuanced.

## II. SCOPE OF THE DEDICATION

Defendants argue that Judge Dodge erred in granting plaintiffs partial summary disposition and ignoring evidence of the plattors' intent, which was demonstrated by, not only

the language used in the dedication, but also in the surrounding circumstances at the time of the grant. Defendants argue that, had Judge Dodge properly considered the surrounding circumstances, it would have concluded that the dedicators created a riparian easement in favor of the backlot owners, which included the right to dock and store boats. We disagree.

"A trial court's ruling on a motion for summary disposition is reviewed de novo. A motion for summary disposition pursuant to MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings, and is appropriately granted where the defendant has failed to state a valid defense to a claim. A defense to a claim is invalid for the purposes of MCR 2.116(C)(9) when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Payne v Farm Bureau Ins*, 263 Mich App 521, 525; 688 NW2d 327 (2004) (internal citations and quotation marks omitted).

A motion under MCR 2.116(C)(10) tests the factual sufficiency of a complaint and is reviewed de novo on appeal. *Urbain v Beierling*, 301 Mich App 114, 121; 835 NW2d 455 (2013).

> In evaluating a motion for summary disposition brought under Subrule (C)(10), a reviewing court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the party opposing the motion. Summary disposition is properly granted if the proffered evidence fails to establish a genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law. [*Klein v HP Pelzer Auto Sys, Inc*, 306 Mich App 67, 75; 854 NW2d 521 (2014), lv den 497 Mich 959 (2015) (internal citations omitted).]

"Summary disposition may be granted in favor of an opposing party under MCR 2.116(I)(2) if there is no genuine issue of material fact and the opposing party is entitled to judgment as a matter of law." *City of Holland v Consumers Energy Co*, 308 Mich App 675, 681–682; 866 NW2d 871 (2015).

"The extent of a party's right under an easement is a question of fact. Thus, our review of the trial court's determination of the parties' respective rights under the easement is for clear error." *Dobie v Morrison*, 227 Mich App 536, 541; 575 NW2d 817 (1998).

Our Supreme Court has explained:

> Land which includes or is bounded by a natural watercourse is defined as riparian. Persons who own an estate or have a possessory interest in riparian land enjoy certain exclusive rights. These include the right to erect and maintain docks along the owner's shore, and the right to anchor boats permanently off the owner's shore. Nonriparian owners and members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing and swimming. [*Thies v Howland*, 424 Mich 282, 287–288; 380 NW2d 463, 466 (1985) (internal citations and footnotes omitted).]

However, "while recognizing that riparian ownership rights may not be transferred apart from riparian land, [*Thies*] established the critical principle that rights normally afforded exclusively to riparian landowners may be conferred by easement." *Little v Kin*, 249 Mich App 502, 511-512; 644 NW2d 375 (2002) (*Little I*).

The crux of the case is whether defendants have the right to seasonally or permanently anchor or store their boats on the property. In determining the scope of an easement, our Supreme Court has admonished that "the trial court shall begin by examining the text of the easement. *Where the language of a legal instrument is plain and unambiguous, it is to be enforced as written and no further inquiry is permitted. If the text of the easement is ambiguous, extrinsic evidence may be considered by the trial court in order to determine the scope of the easement.*" *Little v Kin*, 468 Mich 699; 664 NW2d 749 (2003) (*Little II*) (emphasis added). In a footnote, the Court added that this Court's statement in *Little I* that the inquiry regarding the scope of an easement involves not only the language of the easement but the circumstances existing at the time of the grant was simply false. Such a "directive is clearly inconsistent with the well-established principles of legal interpretation as stated above and is thus incorrect." *Little II*, 468 Mich at 700 n 2.

In finding that the language of the dedication was unambiguous such that extraneous evidence of the dedicators' intent was unnecessary, the trial court in this case relied heavily on *Higgins Lake Property Owners Ass'n v Gerrish Twp*, 255 Mich App 83; 662 NW2d 387 (2003). At issue in that case was the scope of the public's right to use road ends on Higgins Lake. *Higgins Lake*, 255 Mich App at 88. The subdivision plats dedicated the streets and alleys "to the use of the public" and backlot owners used the road ends for "lounging, sunbathing, and picnicking," as well as mooring boats and placing boat hoists at the road ends. *Id.* The plaintiffs argued that these activities exceeded the scope of the dedication and that the dedication was limited to access only while the defendants presented evidence of the traditional and historical uses of the road ends, which included sunbathing, picnicking, lounging, and boat mooring for many years. *Id.* at 89, 92.

The *Higgins* Court could not ignore the factual similarities between the case before it and *Jacobs v Lyon Twp (After Remand)*, 199 Mich App 667; 502 NW2d 382 (1993). It quoted at length from an unpublished decision[1] addressing the "to the use of" language:

> "In *Jacobs*, the precise dispute concerned the use of the road-ends at the waters of another Higgins Lake subdivision whose roads were similarly dedicated 'to the use of the public.' A panel of this Court rejected the defendants' attempt to establish the scope of the dedication through the testimony of witnesses who lived in the area for many years. The court interpreted the opaque dedication 'to the use of the public' to include nothing more than the right to access the lake. We can discern no reason to interpret the similar dedication in the present case differently. Accordingly, we affirm the trial court'[s] finding that the scope of the dedication permitted the installation of one nonexclusive dock at the end of each of the roads

---

[1] *Higgins Lake Prop Owners Ass'n v. Lyon Twp*, unpublished opinion per curiam of the Court of Appeals, issued May 30, 2000 (Docket No. 219768)

leading to the lake, and that the public was entitled to reasonable use of the water for boating, swimming, and fishing. However, we reverse the portion of the trial court's order that determined that the erection of boat hoists and the shore activities were within the scope of the plat dedication because those findings were not supported by the record and were clearly erroneous." [*Higgins Lake*, 255 Mich App at 101-102.]

The *Higgins Lake* Court discerned no evidence to distinguish the dedications before it from the dedication in *Jacobs*: "The use of the terms 'streets' and 'alleys' implies passage, and public roads that terminate at the edge of navigable waters are presumed to provide public access to the water. In light of the case law affirming this presumption, the burden rests with defendants to establish that anything other than mere access to the lake was intended." *Id.* at 102. "In short, we conclude that this Court's reasoning in *Jacobs* is sound and that the records in the instant cases offer no evidence to show that anything more than access to the lake was intended." *Id.* at 102-103. The Court added:

> We reject defendants' reliance on *Dobie v Morrison,* 227 Mich App 536, 575 NW2d 817 (1998), for their argument that the historical uses of the road ends are relevant to a determination of the scopes of the dedications. First, *Dobie* involved rights to a park, not to road ends, which this Court recognized as a meaningful distinction. Also, the *Dobie* Court stated that "[t]he intent of the plattors should be determined with reference to the language used in connection with the facts and circumstances *existing at the time of the grant.*" *Id.* at 540, 575 NW2d 817, citing *Thies, supra* at 293, 380 NW2d 463 (emphasis added). Accordingly, in the absence of evidence that the historical uses of the road ends were contemporaneous with the dedication, the road-end activity occurring *after* the dedication are not helpful in determining the dedicators' intent. [*Higgins Lake,* 255 Mich App at 103.]

The Court concluded:

> Plaintiffs do not dispute the public's right to have access to the lake at the road ends. Members of the public who gain access to a navigable waterbody have a right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. Lounging, sunbathing, picnicking, and the erection of boat hoists at the road ends are prohibited as beyond the scope of the dedications. Consistent with *Jacobs, supra,* one, nonexclusive dock may be erected at each road end to facilitate public access to the water. Members of the public are entitled to moor boats temporarily as an incident of the public's right of navigation. Because the plat language and the applicable law dictate that the road ends are intended to afford access to the public, private docks are not permitted at the road ends. [*Id.* at 103–104.]

*Higgins Lake* is critically important because it confirms that, absent an ambiguity, the courts may not entertain extrinsic evidence of the plattors' intent. Moreover, only those circumstances that existed at the time of the dedication are relevant, not those that took place after the dedication. Additionally, *Higgins Lake* examines the same "to the use" language as the

case at bar and, in the absence of evidence to the contrary, determined that the dedication conferred nothing more than the right to access the lake.

In this case, the trial court made the following observations when it granted partial summary disposition in plaintiffs' favor:

> the critical element here is the dedication; what does the dedication say, and the dedication in the present case is clear and unambiguous by use of the language, "for the use of." That language, "for the use of members of the Plat," means something very specific; it is a right of ingress and egress, access to a navigable body of water. In this case, the Shafer Lake involved here, it means the right to use the surface of the water in a reasonable manner for such activities as boating, fishing, and swimming. Lounging, sunbathing, picnicking, and the erection of boat hoists or seasonal docks are beyond the scope of such a dedication. Boats may be moored temporarily as an incident of the public's right of navigation. Private docks, which are an incident of riparian ownership, are not permitted.
>
> . . .The fact of the matter is that the grantor's intent here is clear from the language of the dedication, and extrinsic evidence is not relevant, nor is subsequent historical use relevant because the legal issue is clear.

We find no fault with the trial court's approach. Although *Higgins Lake* acknowledged that the interpretation of the dedicators' intent presents a factual inquiry on a case-by-case basis, there is no escaping the Court's conclusion that "to the use" includes nothing more than the right to access as well as the installation of one nonexclusive dock for boating, swimming, and fishing. "To the use" does not confer other shore activities, including permanent or overnight mooring. Under *Jacobs* and *Higgins Lake*, the scope of such a dedication permits the installation of one nonexclusive dock, which already exists in this case.

This case is unusual because, aside from seasonal, permanent or overnight mooring, defendants will continue to enjoy expansive use of the property. Plaintiffs concede: "Although all of the Michigan appellate case law cited above would prohibit the backlot property owners from engaging in lounging, sunbathing, picnicking and similar sedentary uses and purposes on Lake Avenue, *Plaintiffs have not requested that the Court order that those activities must cease*." Language in the trial court's orders granting partial summary disposition is concerning, though. It provides:

> With regard to Count I, a declaratory judgment is issued declaring as follows:
>
> > Except as to James O'Neill, the following activities and uses exceed the scope of usage rights under the dedication for Lake Avenue (and its bottomlands and shoreline) in the Plat of Beechwood Terrace and Michigan law.
>
> ***
>
> (3) Any use or activity that is not ingress or egress.

The language must be stricken, as it is completely contrary to plaintiffs' assertions in their motion for summary disposition and request for relief in the trial court. Because plaintiffs

-11-

acknowledged that they would not seek to stop defendants from using the property for lounging, sunbathing, picnicking and other "similar sedentary uses," they are not entitled to language to the contrary. "Equitable estoppel arises where a party, by representations, admissions, or silence intentionally or negligently induces another party to believe facts, the other party justifiably relies and acts on that belief, and the other party will be prejudiced if the first party is allowed to deny the existence of those facts." *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 444; 513 NW2d 148 (1994).

Additionally, the trial court's order must be vacated to the extent it holds that O'Neill enjoyed riparian rights. As previously stated, O'Neill owns Lots 28 and 29, which are adjacent to the property at issue in this case and fronted by Lake Avenue. Citing *2000 Baum Family Trust v Babel*, 488 Mich 136; 793 NW2d 633 (2010), O'Neill argued that he was a riparian owner by virtue of the fact that his property is separated from the water only by Lake Avenue, which runs parallel to the water. The problem is two-fold: (1) the parties spent little time arguing and briefing this issue and the trial court made no findings of fact or conclusions of law regarding O'Neill's rights; (1) the clear and unambiguous language of the dedication excludes O'Neill from making such a claim. It provides that: "Lots 1 to 16 inclusive, and Lake Ave. extend to Lake." At least in the context of statutory construction, "when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011). The same can be said here, where the plattors specifically designated that Lots 1 to 16 and Lake Avenue would extend to the lake but were silent as to the remaining lots. At a minimum, the record needs further development.

In conclusion, we agree that the language of the dedication was unambiguous and that the trial court properly declined to consider extrinsic evidence of the surrounding circumstances. Because "to the use" does not encompass overnight or seasonal dockage or boat storage, the trial court properly granted plaintiffs partial summary disposition. However, because the issue of O'Neill's riparian rights were not fully developed in the trial court and because his claims appear to directly conflict with the plain language of the dedication, we vacate that portion of the trial court's orders granting O'Neill riparian rights. Further, we strike the language of the orders to the extent the trial court limits defendants to mere "ingress and egress," where plaintiffs concede that defendants' use was more expansive.

## III. MOTION TO AMEND THE PLEADINGS

Defendants argue that the trial court erred when it denied their motion to amend the pleadings to more fully allege the affirmative defenses of statute of limitations and prescriptive easement. Defendants further argue that the trial court erred when it refused to allow Chikko to amend the pleadings to include an allegation that she, like O'Neill, was a riparian owner. We disagree.

"Decisions concerning the meaning and scope of pleading, and decisions granting or denying motions to amend pleadings, are within the sound discretion of the trial court and reversal is only appropriate when the trial court abuses that discretion." *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

-12-

At issue is whether defendants properly pleaded prescriptive easement and, if not, whether the trial court abused its discretion in denying defendants' motion to amend.

Following unsuccessful mediation, defendants filed a motion to amend their pleadings in November 2014 to include a claim of express easement or easement by prescription. The motion alleged:

> 13. [Defendants] have acquired riparian rights either through an express easement or by prescription.
>
> 14. There was some dispute that arose during mediation whether this claim is an affirmative defense to the First Amended Complaint or should be made through a counter complaint.
>
> 15. In order [to] ensure that the claim is properly preserved for summary disposition or trial, [defendants] desire to make it clear in their counter compliant [sic] and affirmative defenses that they have acquired riparian rights either through an express easement or by prescription.

Defendants also requested the opportunity to add a claim for declaratory judgment that Chikko was a riparian owner.

Judge Dodge denied the motion, noting that "this motion is untimely; it's too late. There's no proposed Counter-Complaint that's been attached along with it for the Court to review." Judge Dodge also denied the second motion to amend the pleadings. At the January 26, 2015, hearing on plaintiffs' motion for partial summary disposition, defense counsel argued that a claim for prescriptive easement had, in fact, been pleaded:

> [Attorney Bloom] stated that prescriptive easement is not even in this case; that's not true. We've plead throughout this case in our answer that we have those rights, and that we are riparian owners, whether it's prescriptive easement, express easement, adverse possession; some other claim that we have that gives my clients riparian rights. What happened at this case was at mediation we had heard through the mediator that Plaintiffs were suggesting that our pleadings were insufficient. So, we came out of that and requested to file an amendment so that we could clarify our defenses that we've set forth. We didn't ask to add any additional defenses. We asked to clarify the defenses we had, that's why we wanted to file an amendment to the affirmative defenses, but we have – but the Court has never stated that prescriptive easement is out; that's just incorrect. The Court has only stated that the amendment that we wanted to file, the Court did not permit that. I think that's an important distinction.

However, on appeal, the Trust now argues that it "was not 'restating' any allegations, but was raising new allegations and defenses." The remaining defendants argue the opposite (and in keeping with the argument in the trial court) – that a prescriptive easement was properly pleaded.

Defendants look to the statute of limitations in MCL 600.5801(4), which provides:

-13-

No person may bring or maintain any action for the recovery or possession of any lands or make any entry upon any lands unless, after the claim or right to make the entry first accrued to himself or to someone through whom he claims, he commences the action or makes the entry within the periods of time prescribed by this section.

***

(4) Other cases. In all other cases under this section, the period of limitation is 15 years.

Defendants are correct that § 600.5801(4) is the limitations period that gives rise to claims for adverse possession and prescriptive easement. However, defendants' mere reference to "statute of limitations" – without reference to this specific statute – did not suffice to raise a claim for prescriptive easement. That is because a claim for prescriptive easement contains a number of elements and a very high burden of proof not otherwise found in a statute of limitations defense.

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years. An easement by prescription requires elements similar to adverse possession, except exclusivity." *Higgins Lake,* 255 Mich App at 118. "The burden is on the party claiming a prescriptive easement to show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement." *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007). In fact, a plaintiff claiming entitlement to a prescriptive easement must do so by "clear and cogent evidence." *Matthews v Natural Resources Dep't*, 288 Mich App 23, 37; 792 NW2d 40 (2010), citing *Killips v Mannisto*, 244 Mich App 256, 260; 624 NW2d 224 (2001). This is an exacting standard:

"clear and cogent evidence" is more than a preponderance of evidence, approaching the level of proof beyond a reasonable doubt. That is to say, the standard is much like "clear and convincing evidence." (See "clear and convincing proof," Black's Law Dictionary, *supra.*) Thus, in an adverse possession case, for a party to establish possession by "clear and cogent evidence," the evidence must clearly establish the fact of possession and there must be little doubt left in the mind of the trier of fact as to the proper resolution of the issue. Thus, where there is any reasonable dispute, in light of the evidence, over the question of possession, the party has failed to meet his burden of proof. [*McQueen v Black*, 168 Mich App 641, 645; 425 NW2d 203 (1988).]

Given defendants' high burden, the affirmative defense of a prescriptive easement was not properly pleaded. Affirmative defenses are addressed in MCR 2.111(F)(3), which provides:

(3) *Affirmative Defenses.* Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118. Under a separate and distinct heading, a party must state the facts constituting

(a) an affirmative defense, such as contributory negligence; the existence of an agreement to arbitrate; assumption of risk; payment; release; satisfaction;

-14-

discharge; license; fraud; duress; estoppel; statute of frauds; statute of limitations; immunity granted by law; want or failure of consideration; or that an instrument or transaction is void, voidable, or cannot be recovered on by reason of statute or nondelivery;

(b) a defense that by reason of other affirmative matter seeks to avoid the legal effect of or defeat the claim of the opposing party, in whole or in part;

(c) a ground of defense that, if not raised in the pleading, would be likely to take the adverse party by surprise.

Nowhere does the answer allege facts constituting adverse possession or prescriptive easement. Nor does the answer hint at those defenses with reference to language such as "open," "notorious," "adverse," or "continuous" for a 15-year period. "In essence, it is the intent of the [former GCR 1963, 111.7, now MCR 2.111] to provide for fact pleading sufficient to give plaintiff notice of the affirmative defenses alleged." *Hanon v Barber*, 99 Mich App 851, 855–856; 298 NW2d 866 (1980). "The underlying rationale for requiring a party to provide factual support for affirmative defenses is to prevent the adverse party from being taken by surprise at trial." *Horvath v Delida*, 213 Mich App 620, 630; 540 NW2d 760 (1995). While the trial court indicated that the case may have included an inquiry into a prescriptive easement,[2] this was not a situation in which the parties agreed to litigate that issue. Instead, the primary focus was on interpreting the dedication and determining whether an express easement for riparian use existed and, whether in so interpreting, the trial court needed to consider the surrounding circumstances at the time of the dedication. The trial court did not abuse its discretion in ruling that defendants' answer was insufficient to put defendants on notice of a claim for prescriptive easement.

Having concluded that defendants failed to plead a claim for prescriptive easement, the question becomes whether the trial court abused its discretion in denying defendants' motion to amend.

MCR 2.118(A)(2) provides that: "Except as provided in subrule (A)(1), a party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when justice so requires."[3] However, "[t]he discretion confided to trial

---

[2] At a later hearing, Judge Dodge made the following observation:

Either there has been a prescriptive easement or an entitlement that's proven at trial, or not . . .That's just the way the law is, you know. If you haven't established that you've got a prescriptive right to have a dock or to permanently moor a boat, the law in Michigan is very clear then, you don't have any riparian interest or ownership, and out it goes.

[3] Also see MCL 600.2301: "The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment

judges under the standard, 'leave shall be freely given when justice so requires,' is not boundless." *Ben P Fyke & Sons, Inc v Gunter Co*, 390 Mich 649, 658; 213 NW2d 134 (1973). The language "imposes a limitation on the discretion of the court necessitating a finding that justice would not be served by the amendment." *Id.* (internal citations omitted). This is true because "[t]he allowance of an amendment is not an act of grace, but a right of a litigant seeking to amend in the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, [or] futility of amendment." *Id.* at 659 (internal quotation marks omitted). "Leave to amend should be denied only for particularized reasons." *Miller v Chapman Contracting*, 477 Mich 102, 105; 730 NW2d 462 (2007). "The trial court must specify its reasons for denying leave to amend, and the failure to do so requires reversal unless the amendment would be futile." *PT Today, Inc v Comm'r of Office of Fin & Ins Services*, 270 Mich App 110, 143; 715 NW2d 398 (2006).

In denying the motion to amend, Judge Dodge simply indicated that "this motion is untimely; it's too late." Our Supreme Court has noted that "[w]hile as a general rule, the risk of substantial prejudice increases with the passage of time, in the absence of a showing of either bad faith or actual prejudice, mere delay does not warrant denial of a motion to amend. All amendments have this in common: they are offered later in time than the pleading they seek to amend." *Ben P Fyke & Sons,* 390 Mich at 663–664; 213 NW2d 134 (1973), quoting James, Civil Procedure, s 5.2, p. 158. "'Prejudice' in this context does not mean that the allowance of the proffered amendment may cause the opposing party to ultimately lose on the merits." *Weymers*, 454 Mich at 659. "Prejudice, in the context of a motion to amend a complaint, exists if the amendment would prevent the opposing party from receiving a fair trial." *Id*. In fact, "the remedy for undue delay is not to deny the amendment but, rather, the remedy is to sanction the offending party to reimburse the opponent for the additional expenses and attorney fees incurred because of the inexcusable delay in requesting an amendment." *Traver Lakes Community Maintenance Ass'n v Douglas Co*, 224 Mich App 335, 344; 568 NW2d 847 (1997). Still, an untimely motion to amend on the eve of trial may be denied when it "would not have served the interests of justice." *Cummings v City of Detroit*, 151 Mich App 347, 353; 390 NW2d 666 (1986).

While delay would generally not form the basis for denying a motion to amend, at the time defendants filed the motion to amend, the litigation had already become a protracted affair. Defendants' conduct often delayed the proceedings. They engaged in sanctionable behavior. While defendants argue that three months of discovery remained at the time of the motion, Judge Dodge had indicated his desire to control what had become uncontrollable. To that end, he ordered the discovery "per se" would be open until the scheduled trial in February 2015, but that all written discovery would be sharply curtailed and completed by December 2014. No doubt an amendment would have significantly delayed the proceedings. Judge Dodge did not specifically conclude that the delay was the result of bad faith or actual prejudice, but such can be inferred. The trial court did not abuse its discretion when it denied defendants' motion to amend the pleadings to "clarify" or add a claim of prescriptive easement. "[P]arties ought to be afforded great latitude in amending their pleading before trial, however, that interest must be weighed

_____

rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties."

against the parties' and the public's interest in the speedy resolution of disputes." *Weymers*, 454 Mich at 660.

The same is true for the trial court's refusal to allow defendants to amend the counter claim to include Chikko's request that her Lot 30 be deemed riparian. Again, this fact was known to defendants from the very beginning. They knew O'Neill was claiming a similar right and they knew that Chikko's property was similarly situated and adjacent to O'Neill's. Why the delay in bringing such a claim if not for tactical gamesmanship? Rules permitting amendments are not "a license for carelessness or gamesmanship. Parties to litigation have an interest in speedy resolution of their disputes without undue expense. Substantive amendments to the complaint just before trial are not to be countenanced and only serve to defeat these interests. The district court must consider the harm when deciding whether to grant leave." *Weymers*, 454 Mich at 660–661, quoting *Feldman v Allegheny Int'l Inc*, 850 F2d 1217, 1225-1226 (CA7, 1988).

To the extent defendants rely on MCR 2.116(I)(5), which requires a trial court to permit a party to amend proceedings if summary disposition is granted under MCR 2.116(C)(8)-(10), plaintiffs correctly point out that this rule has little application where defendants' motion to amend pre-dated plaintiffs' motion for partial summary disposition.

Moreover, it appears that a claim for prescriptive easement would have been futile. Defendants alleged that plaintiffs knew and consented to defendants' prior use of Lake Avenue. "[P]ermissive use of property, regardless of the length of the use, will not result in an easement by prescription." *W Michigan Dock & Mkt Corp v Lakeland Investments*, 210 Mich App 505, 511; 534 NW2d 212 (1995). See also *O'Brien v Hicks*, unpublished opinion per curiam of the Court of Appeals, entered November 20, 2012 (Docket No. 307332) ("One may not acquire a prescriptive easement to property already subject to an easement for the benefit of an entire subdivision and created through a private dedication simply because an owner 'overuses' the easement."); *Chauvette v Owczarek*, unpublished opinion per curiam of the Court of Appeals, entered October 26, 2006 (Docket No. 262473) (questioning whether "a prescriptive easement can arise with respect to property already subject to an easement for the benefit of an entire subdivision that was created through a private dedication."); *Banacki v Howe*, unpublished opinion per curiam of the Court of Appeals, entered March 20, 2012 (Docket No. 302778) ("In this case, the trial court properly rejected defendants' claim of a prescriptive easement on the basis that a prescriptive easement cannot arise with respect to property already subject to an easement for the benefit of an entire subdivision that was created through a private dedication simply because a lot owner "overuses" the easement. There is no basis for the establishment of a prescriptive easement because of the absence of the element of adversity.")

The trial court did not abuse its discretion when it concluded that a claim for prescriptive easement had not been pleaded. Nor did the trial court abuse its discretion in denying defendants' motion to amend where the delay was unjustified and an amendment would have only resulted in a delay in proceedings. More importantly, the amendment would have been futile.

## IV. MOTION TO ADJOURN HEARING ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY DISPOSITION

-17-

The Trust argues that the trial court erred when it denied defendants' motion to adjourn plaintiffs' motion for partial summary disposition. We disagree.

"A lower court's denial of a motion to adjourn should not be reversed absent an abuse of discretion." *Zerillo v Dyksterhouse*, 191 Mich App 228, 230; 477 NW2d 117 (1991).

The Trust appears to conflate separate issues. The fact that plaintiffs' motion for summary disposition may have been premature is a reason for the trial court to deny the motion; it is not a reason to postpone a *hearing* on the motion for summary disposition. "A grant of summary disposition is premature if granted before discovery on a disputed issue is complete. However, summary disposition is appropriate if there is no fair chance that further discovery will result in factual support for the party opposing the motion." *Mackey v Dep't of Corrections*, 205 Mich App 330, 333; 517 NW2d 303 (1994). Therefore, there is nothing to preclude granting summary disposition before the end of discovery.

## V. LANGUAGE IN THE ORDER OF DISMISSAL

The Trust next argues that trial court erred when it rejected language in defendants' order of dismissal that would have permitted defendants to resurrect their claims in the event the Court of Appeals reversed the partial summary disposition. The Trust contends that it was entitled to use such language where plaintiffs had utilized identical language in their prior order of dismissal. We disagree.

"Normally, discretionary issues are reviewed for an abuse of discretion, which is an unusually difficult standard to overcome." *Lease Acceptance Corp v Adams*, 272 Mich App 209, 222; 724 NW2d 724 (2006).

On March 16, 2015, the trial court entered an order granting plaintiffs' motion to voluntarily dismiss Counts III-VII of the amended complaint without prejudice. The order added: "If the Court of Appeals reverses this Court's decisions on Counts I and/or II of the First Amended Complaint and/or remands Counts I and/or II to this Court for further consideration, Plaintiffs may move the Court to reinstate all or a portion of Counts III through VII in this lawsuit and would not be required to file a new lawsuit to reinstate the counts."

Defense counsel wanted his order to mirror the plaintiffs' previous order, which would have allowed defendants to resurrect any of their claims if the Court of Appeals reversed or remanded any aspect of the case. The trial court agreed with plaintiffs' attorney that the two matters were dissimilar. Whereas the plaintiffs' dismissed claims were redundant, defendants claimed different relief other than the mere declaration of the scope of the dedication. They claimed trespass and nuisance and sought to quiet title. The trial court noted:

> I think this is a different situation tha[n] when we had the equitable claims dismissed as a result of partial summary disposition.

> Here, we are talking about these Counts being key to the case evaluation result, and the acceptance of that, and consequently, I think it's appropriate to have the order say just what [plaintiffs'] order does, and that is it just says this does not preclude the [defendants] from reinstating or re-alleging the dismissed Counts otherwise allowed by law.

-18-

The Trust's real argument is that the trial court showed bias when it allowed the different orders to be entered. The Trust writes: "Inconsistent ruling demonstrate an abuse of discretion and bias. The trial court erred when it made different, inconsistent rulings on the same issues." The Trust raises this issue in the broader context of its allegation that Judge Dodge was biased. As demonstrated below, the Trust's claim is without merit.

## VI. JUDICIAL BIAS

Finally, the Trust argues that Judge Dodge erred in failing to disqualify himself. It further argues that Judge Johnston also erred in failing to grant the motion for disqualification. We disagree.

"We review a trial court's factual findings regarding a motion for disqualification for an abuse of discretion and its application of the facts to the law de novo." *In re MKK*, 286 Mich App 546, 564; 781 NW2d 132 (2009). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id.* (internal quotation marks omitted).

Defendants moved to disqualify Judge Dodge's predecessor – Judge Dufon – for similar reasons. Defendants' July 3, 2014 motion for disqualification claimed that Judge Dufon showed personal bias by "consistently rul[ing] in favor of Plaintiffs . . ." DePerno further argued that Judge Dufon had the appearance of impropriety and an economic interest in the matter. Specifically, counsel alleged that Judge Dufon's friend and his secretary were embroiled in a federal RICO case in which defense counsel might be called as a witness. And, because Van Buren County was also involved in the suit, Judge Dufon had an economic interest because the county was his employer. DePerno further noted that, instead of limiting discovery that had grown out of control, Judge Dufon sanctioned him "because there's bad blood . . ." DePerno added that he intended to file a grievance with the (JTC). Judge Dufon found defense counsel's allegations "baseless," "without merit," and untimely. Judge Dufon noted: "it certainly appears that there was something that was kept in his back pocket in case things didn't appear to be going how he wanted . . ." Nevertheless, given the fact that Judge Dufon's staff was involved, there was the appearance of impropriety, so he disqualified himself.

Following Judge Dodge's order granting plaintiffs partial summary disposition, defendants sought to have Judge Dodge disqualified. In their February 9, 2015 motion, DePerno alleged:

> In this case, Judge Dodge has demonstrated a clear personal bias in favor of his [sic] the Plaintiffs and against the Defendants and their attorney. Judge Dodge has consistently ruled in favor of the Plaintiffs[.] But more importantly, Judge Dodge failed to disclose his relationship with Attorney Bloom. Judge Dodge also failed to disclose that he owns property on Eagle Lake, as a riparian owner, and has been involved in two separate lawsuits involving lake access and riparian rights in which Attorney Bloom has represented his interests through the Eagle Lake Improvement Association . . . Judge Dodge has a clear bias against "backlot" owner[s] or others attempting to gain access to the lake when they don't own property on the lakeshore.

-19-

A hearing took place on February 17, 2015 at which time DePerno explained that it was only after Judge Dodge granted partial summary disposition that defense counsel learned that Bloom represented Judge Dodge through Eagle Lake's association in lake disputes over the past nine years. Specifically, Bloom represented the lake front owners on issues involving "riparian rights, overcrowding, anti-funneling, anti-key-holing, boat traffic, docking issues, development of a marina, violation of zonings, safety standards, the financial impact on the riparian owners, encroachment of the bottom lands." In fact, defense counsel pointed out that Judge Dodge had previously recused himself in two prior cases – once due to his membership in the Association and the other because he had an interest in the outcome. Defense counsel unearthed a memo indicating that Judge Dodge had contributed money to cover legal fees. Defense counsel noted that in a conflict with the DNR regarding the scope of a dedication "for the use of" in the Eagle Lake claim, Judge Dodge was now equipped with his opinion in the case at bar that limited the dedication. DePerno pointed to the disparate treatment during discovery in which defendants were twice sanctioned for failing to answer plaintiffs' 300+ interrogatories and then Judge Dodge denied defendants' motion to compel plaintiffs to answer similar interrogatories. Instead, Judge Dodge significantly restricted discovery. DePerno also noted that Judge Dodge denied the motion for reconsideration of Judge Dufon's orders even though Judge Dodge had determined that the discovery was largely unnecessary. DePerno advised the court that he would be filing a grievance with the Judicial Tenure Commission.

In denying the motion to disqualify, Judge Dodge noted that there was no basis for doing so simply because of adverse rulings: "I have absolutely no bias toward any attorney or party in this case. The rulings that I've made have strictly been made on my understanding and application of the law, and my exercise of judicial discretion in handling what has proven to be a very complex and extensive case." To the extent defendants complained that there were outstanding motions yet to be ruled upon, Judge Dodge noted that he and his clerk may have "missed that in the blizzard of trying to catch up with everything" and that he would be sure to rule on the motions for reconsideration. Judge Dodge also noted that any previous ex parte communications with Judge Dufon had no bearing on anything. And simply fielding a phone call from an attorney about whether he could file a reply brief did not constitute an ex parte communication. Judge Dodge denied that Bloom ever represented him individually and denied ever meeting Bloom. As for his involvement with the Eagle Lake Association, Judge Dodge explained that his involvement was limited to situations in which the Association solicited funds for weed eradication or fireworks displays. He never attended any meetings or became involved in any Association "issues." In 2008 Judge Dodge immediately discontinued his membership and contributions once he was made aware of a lawsuit. He also disqualified himself from the lawsuit "simply because I'm a lake resident. The appearance there is I'm going to be impacted by whatever the decision is." Judge Dodge disqualified himself from a second lawsuit for the same reason – "because I could be interested in or impacted by the outcome of the case, I got out of it." He noted:

> In terms of making disclosures, and I want to comment on, you know, this whole issue of me being a lake front owner and my membership or not in the Eagle Lake Improvement Association, the reason that I didn't make any disclosures is I didn't know that there was anything that required being disclosed. I didn't know any of these parties, I didn't know the attorneys involved, or that I had any issues with any of them. Yes, I'm a lake front property owner. I've never had any bad experience with back lot owners, and I've had tons of lake

-20-

dispute cases, and in fact, I've had several that have involved this very issues [sic], which is a common issue with inland lakes, and Cass County's got a lot of inland lakes. So, that's the reason there wasn't any disclosure; I didn't feel like there was any need to disclose anything. Yes, I own property on the channel at Eagle Lake, which I've owned for twenty years, and, you know, any more than a parent needs to disqualify because they have a child the same age involved in a child custody case, my ownership of lake front property, I felt, had absolutely nothing to do with it.

Judge Dodge concluded:

Finally, you know, hey, the last thing I needed was a case like this. This is a nightmare for a judge who's already got a full docket, then to latch onto something – I don't think I've ever had a case where we've gone to twenty-plus Court files or volumes.

There's no basis to disqualify here, and simply because the accusations were leveled, which are totally without merit, and simply because, you know, today Attorney DePerno indicates he's going to file a complaint with the Judicial Tenure Commission, fine; you know, have at it. It has absolutely nothing to do with my feeling that I can be fair, unbiased, and impartial with the people that are involved with this case, and render a decision that I think is based on an accurate ruling based on Michigan law. I have no bias for or against riparian owners, back lot owners; it just doesn't matter to me at all.

The easy way out, Mr. DePerno, is for me to do what Judge Dufon did, and that's deny your motion for disqualification, and then, say, you know, I think I better get out of this case; that would be the easy thing to do, believe me. Look at all the – all the hearings, all the files, all of the work that would be involved that I could avoid. I'm not going to do that. My responsibility as the Judge is to do my job, and some cases are more difficult that [sic] others. This one just happens to be a little more complicated, a little more difficult than others, but it goes with the territory, and I can tell you, looking you straight in the eye, and any clients that you've got here, I have made these rulings strictly based on the law, and what I've reviewed in the materials before me, and I have no interest one way or the other in who wins or loses this thing. It's their fight, but it's my job to try and reach a just and appropriate resolution to this case, and that's what I've been trying to do, and that's what I'll continue to do.

Defendants then challenged the motion for disqualification. SCAO assigned Kent Circuit Court Judge Donald A. Johnston to hear the appeal. A de novo hearing was held on May 11, 2015. DePerno pointed out the inconsistent rulings, especially the fact that Judge Dodge declared discovery to be "out of control" and then denied defendants' motion for a protective order and denied defendants' motion to set aside Judge Dufon's prior orders. DePerno also took issue with the fact that Judge Dodge struck language in defendants' order of dismissal when the judge had previously approved the exact language in plaintiffs' dismissal. DePerno also pointed out that defendants had not been successful on a single motion. But DePerno stated that the real crux of the issue was the conflict Judge Dodge had due to his affiliation with the Eagle Lake

Association and Bloom and the fact that Judge Dodge had previously disqualified himself on other such cases.  DePerno had a subpoena to the Association to determine the level of Judge Dodge's involvement.  In addition to the prior suits and memos, DePerno claimed he had learned new relevant facts since the original motion for disqualification.  Judge Dodge used to live on Magician Lake and was involved in litigation involving back lot owners attempting to access the lake across his property through an easement.  "And I've been told that losing that case is the very thing that precipitated him selling his property on Magician Lake and buying his property on Eagle Lake."  Counsel indicated that two attorneys in Cass County reported that if an attorney represented a back lot owner on a riparian case, the only way to win was to disqualify Judge Dodge.  DePerno also pointed to times when the Court of Appeals had overruled Judge Dodge on riparian issues.  DePerno added:  "We are now going to go to the Court of Appeals on the very issue that Judge Dodge just ruled on, which we all now know affects his interest on Eagle Lake.  You can't do that as a Judge.  You can't affect jurisprudence when you have an ongoing legal dispute regarding the very same issue."  Incredibly, DePerno made the following analogy: "let's assume a Judge was raped.  Could that Judge then rule on rape cases, or would that create a bias for the Judge?  Especially if the Judge has expressed a dislike for rapists."  DePerno concluded:

> In this case we have a class of back lot owners. It is crystal clear to me that Judge Dodge does not like back lot owners. He hasn't ruled in their favor in ten years. He's overturned on these issues by the Michigan Court of Appeals. Yet even though he's overturned on those issues, he comes back within several months and rules in the very same way again. He has been in disputes with back lot owners for years. There's no way we ever had a chance in this case, and one of the hallmarks of a fair trial is that your clients, the people we represent and us attorneys, can come to court and believe that we are going to receive justice, a fair playing field, and I will tell you, in 20 years, this is the first time I've ever been in a court where I can say I don't think that's happened. There is no way we had a fair shot in this case from the get-go. This should have been disclosed to us, and Judge Dodge should be disqualified.

Judge Johnston denied defendants' motion.  Judge Johnston first noted that adverse rulings did not constitute a basis for disqualification; instead, such rulings could be addressed on appeal.  He added:

> I suppose if you're sitting out front and not up on the bench, it's easy to conclude that if the Judge rules against you, he must somehow be biased. But the Judge may have ruled against you because you were wrong on the facts or wrong on the law or even because the Judge made a mistake. But that doesn't necessarily mean the Judge is biased, and, in fact, generally it doesn't mean the Judge was biased. We have, it seems to me, over the years a relatively small number of cases in which actual judicial bias has occurred.

Judge Johnston did not believe that there was any evidence that Judge Dodge was actually biased against defendants and that the "more compelling" issue was whether there was the appearance of impropriety.  While finding that perhaps "the better part of wisdom" may have compelled Judge Dodge to reveal that he was a lakefront owner, Judge Johnston did not believe that the fact that Judge Dodge owned lakefront property on a different lake in a different county precluded

Judge Dodge from considering the case. Judge Johnston acknowledged why back lot owners might feel like they were "not going to get a square deal" and "be leery," such concerns were not objective. Judge Johnston accepted Judge Dodge's claim that Bloom represented only the Association, of which Judge Dodge was no longer a member.

"Due process requires that an unbiased and impartial decision-maker hear and decide a case." *Mitchell v Mitchell*, 296 Mich App 513, 523; 823 NW2d 153, lv den 491 Mich 940 (2012). Under MCR 2.003(C)(1), a judge must be disqualified from hearing a case in which he cannot act impartially or is biased against a party. However "[a] trial judge is presumed unbiased, and the party asserting otherwise has the heavy burden of overcoming the presumption." *Mitchell*, 296 Mich App at 523. MCR 2.003(C)(1)(b) provides that disqualification of a judge is warranted if "The judge, based on objective and reasonable perceptions, has either (i) a serious risk of actual bias impacting the due process rights of a party as enunciated in *Caperton v Massey*, [556] US [868]; 129 S Ct 2252; 173 L Ed 2d 1208 (2009), or (ii) has failed to adhere to the appearance of impropriety standard set forth in Canon 2 of the Michigan Code of Judicial Conduct." For purposes of this appeal, the following subsections of Canon 2 are at issue:

> A. Public confidence in the judiciary is eroded by irresponsible or improper conduct by judges. A judge must avoid all impropriety and appearance of impropriety. A judge must expect to be the subject of constant public scrutiny. A judge must therefore accept restrictions on conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly.

> B. A judge should respect and observe the law. At all times, the conduct and manner of a judge should promote public confidence in the integrity and impartiality of the judiciary. Without regard to a person's race, gender, or other protected personal characteristic, a judge should treat every person fairly, with courtesy and respect.

> C. A judge should not allow family, social, or other relationships to influence judicial conduct or judgment. A judge should not use the prestige of office to advance personal business interests or those of others . . .

Here, although the Trust claims that there was actual prejudice, the focus of the argument is on whether there was the appearance of impropriety. The Trust cites *Caperton v Massey*, 556 US 868; 129 S Ct 2252 (2009), highlighting "the risk of undermining the public's confidence in the judicial process." The test for determining whether there is an appearance of impropriety is "whether the conduct would create in reasonable minds a perception that the judge's ability to carry out judicial responsibilities with integrity, impartiality and competence is impaired." *People v Aceval*, 486 Mich 887, 888-889; 781 NW2d 779 (2010), quoting *Caperton*, 129 S Ct at 2255.

In *Caperton*, a justice on West Virginia's Supreme Court declined to recuse himself from hearing a case that involved an individual who had contributed extraordinary amounts to the justice's election campaign. In finding that failure to recuse was an error, the United States Supreme Court acknowledged that there are "circumstances in which experience teaches that the probability of actual bias on the part of the judge or decisionmaker is too high to be

constitutionally tolerable." *Caperton*, 556 US at 877 (internal quotation marks and citation omitted). The Court accepted the justice's "probing search into his actual motives and inclinations" and did not dispute that "his subjective findings of impartiality and propriety." *Id.* at 882. Nevertheless, the Court explained:

> The difficulties of inquiring into actual bias, and the fact that the inquiry is often a private one, simply underscore the need for objective rules. Otherwise there may be no adequate protection against a judge who simply misreads or misapprehends the real motives at work in deciding the case. The judge's own inquiry into actual bias, then, is not one that the law can easily superintend or review, though actual bias, if disclosed, no doubt would be grounds for appropriate relief. In lieu of exclusive reliance on that personal inquiry, or on appellate review of the judge's determination respecting actual bias, the Due Process Clause has been implemented by objective standards that do not require proof of actual bias. In defining these standards the Court has asked whether, under a realistic appraisal of psychological tendencies and human weakness, the interest poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. [*Id.* at 883-884.]

The Court found that not all campaign activity will render a judge incapable of hearing a case, but that the focus must be on "the contribution's relative size in comparison to the total amount of money contributed to the campaign, the total amount spent in the election, and the apparent effect such contribution had on the outcome of the election." *Id.* at 884. The focus must also be on the "temporal relationship between the campaign contributions, the justice's election, and the pendency of the case." *Id.* at 886. Searching for evidence of actual bias is "just one step in the judicial process; objective standards may also require recusal whether or not actual bias exists or can be proved." *Id.* "The failure to consider objective standards requiring recusal is not consistent with the imperatives of due process." *Id.* The Court concluded: "We find that [the third party's] significant and disproportionate influence—coupled with the temporal relationship between the election and the pending case offer a possible temptation to the average judge to lead him not to hold the balance nice, clear and true. On these extreme facts the probability of actual bias rises to an unconstitutional level." *Id.* at 886-887 (internal quotation marks and citations omitted). The Court also noted that several states have undertaken reforms to combat not only actual judicial bias, but the appearance of partiality. *Id.* at 888.

The Trust argues that Judge Dodge's bias was demonstrated in his inconsistent and unfavorable rulings. However, "judicial rulings, in and of themselves, almost never constitute a valid basis for a motion alleging bias, unless the judicial opinion displays a 'deep-seated favoritism or antagonism that would make fair judgment impossible' and overcomes a heavy presumption of judicial impartiality." *Armstrong v Ypsilanti Charter Twp*, 248 Mich App 573, 597; 640 NW2d 321 (2001), quoting *Cain v Dep't of Corrections*, 451 Mich 470, 503; 548 NW2d 210 (1996). In fact, "a trial judge's remarks made during trial, which are critical of or hostile to counsel, the parties, or their cases, ordinarily do not establish disqualifying bias." *In re MKK*, 286 Mich App 546, 567; 781 NW2d 132 (2009), lv den 486 Mich 909 (2010). The Trust points to the fact that Judge Dodge denied defendants the right to amend their pleadings based solely on the fact that the motion was untimely. However, as previously discussed, this decision was not an abuse of discretion under the circumstances. Additionally, although the Trust argues

-24-

that Judge Dodge unfairly upheld Judge Dufon's previous orders assessing sanctions against defendants for discovery violations and then turned around and severely limited discovery going forward, it is clear that Judge Dodge did so, not because he was biased for or against any party, but because the case was spiraling out of control. Judge Dodge sought to expedite a relatively simple case and his "enough is enough" approach was warranted under the circumstances.

Although the Trust argues that Judge Dodge was biased against all backlot owners because he was a waterfront owner, such an accusation is purely speculative. Judge Dodge owned property in another county on another lake. He clearly had no problem recusing himself in other cases in which he had a personal interest as a waterfront owner. Judge Dodge no longer belonged to the Eagle Lake Association, which was represented by Attorney Bloom. Defendants' allegation of bias was based on defendants' own subjective perception. However, MCR 2.003(C)(1)(b) requires the court to consider "objective and reasonable perceptions." As such, neither Judge Dodge nor Judge Johnston abused their discretion in denying defendants' motion for disqualification. There was no serious risk of actual bias or appearance of impropriety.

Affirmed in part, vacated in part, and remanded for further proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Peter D. O'Connell
/s/ Mark T. Boonstra