KITCHEN v STATE FARM INSURANCE COMPANY

Docket No. 146455. Submitted June 3, 1993, at Grand Rapids. Decided October 5, 1993, at 9:40 A.M. Leave to appeal sought.

Dennis Kitchen, for himself and as next friend of his minor daughter, Elisha Kitchen, and Diane Kitchen brought an action in the Houghton Circuit Court against State Farm Insurance Company, their no-fault automobile insurer, seeking no-fault benefits for Elisha's special housing and care needs ensuing from an automobile accident in which she sustained injuries that rendered her a quadriplegic. The parties stipulated that land would be purchased and a residence adapted to Elisha's needs and occupied by the plaintiffs' entire family would be constructed. The parties further stipulated that the defendant would bear most of the costs of construction of the residence. The court, John A. Mikkola, J., entered an order providing that legal title of the residence would be held by a neutral corporate trustee and that the trustee would hold the real estate in trust for Elisha during her lifetime. The order also provided that plaintiffs need not contribute their equity in their present home toward the purchase of the new home; that taxes and insurance for the new home would be borne by the parties in proportion to their respective contributions toward the purchase of the new home; that maintenance and utility costs of the new home would be borne by the plaintiffs until no member of the plaintiffs' family other than Elisha was residing in the home, at which time the defendant would assume those costs; and that if Elisha failed to reside in the new home for 180 consecutive days, the home could be sold and the proceeds divided between the parties in proportion to their contributions toward the purchase of the home. The plaintiffs appealed.

The Court of Appeals held:

1. The trial court did not err in refusing to transfer ownership of the new home to Elisha. Ordering that Elisha have a life estate in the home satisfies the requirements of MCL 500.3107(1)(a); MSA 24.13107(1)(a) with respect to the defen-

REFERENCES
Am Jur 2d, Automobile Insurance §§ 359, 365, 367.
See ALR Index under No-Fault Insurance.

dant's obligation to pay for all reasonable charges incurred for products, services, and accommodations reasonably necessary to meet Elisha's needs.

2. The trial court did not err in ordering the plaintiffs to bear the maintenance and utility costs of the home until such time as Elisha will be the only member of the plaintiffs' family residing in the home. The order is consistent with the defendant's obligations under § 3107(1)(a).

3. The trial court did not err in rejecting a claim by which the plaintiffs sought to have defendant pay medical expenses for Elisha in the event that she is required to reimburse her health insurer. Because the plaintiffs' no-fault policy with the defendant was coordinated with the plaintiffs' health insurance, primary responsibility for Elisha's medical expenses lies with the health insurer. The health insurer may only seek reimbursement out of any third-party tort recovery.

Affirmed.

INSURANCE — NO-FAULT — PERSONAL PROTECTION INSURANCE — SPECIAL HOUSING EXPENSES.

Where a no-fault insurer satisfies its obligation under the no-fault act to provide reasonably necessary products, services, and accommodations for the special housing needs of an insured who is rendered a quadriplegic in an automobile accident by bearing most of the cost of construction of a home adapted to the needs of the insured and granting the insured a life estate in the home, conveyance of legal title of the home to the insured is not required (MCL 500.3107[1][a]; MSA 24.13107[1][a]).

*Sumpter, Perry & McDonald, P.C.* (by *Thomas E. McDonald*), for the plaintiffs.

*Cholette, Perkins & Buchanan* (by *Robert E. Attmore*), for the defendant.

Before: SHEPHERD, P.J., and HOLBROOK, JR., and MACKENZIE, JJ.

PER CURIAM. Plaintiffs appeal as of right from an order granting summary disposition in favor of defendant pursuant to MCR 2.116(C)(10). We affirm.

The facts are not in dispute. On February 14, 1989, Elisha Kitchen, then age six, was involved in a motor vehicle accident that rendered her a quadriplegic. At the time of the accident, Elisha's parents (plaintiffs) were insured under a no-fault automobile insurance policy issued by defendant. Additionally, the Kitchen family was provided major medical insurance coverage by Sysco Frostpack, the employer of Elisha's father.

Elisha's physicians determined that she required special housing accommodations to meet her long-term needs. The parties eventually stipulated that defendant would provide $17,332 toward the purchase of four lots to be used as the site of a new home. It was further agreed that defendant would pay $239,782.41 for the construction of the home, while plaintiffs would pay $68,561.41. A determination of the parties' respective ownership interests in the home was reserved for future determination.

On December 12, 1990, the trial court entered an order providing that legal title to the new home would be held by an independent neutral corporate trustee and that the trustee would hold the real estate in trust for Elisha during her lifetime. The order also provided that plaintiffs were not required to contribute the existing equity in their present home toward the purchase of the new home, although it was apparently understood that the entire Kitchen family would be living in the new home. Under the terms of the order, taxes and insurance for the property would be paid pro rata by the parties in proportion to their contribution toward the purchase of the home. Maintenance and utilities charges were ordered to be paid by plaintiffs until no member of the Kitchen family other than Elisha was residing in the home, at which time defendant would pay all appropriate

maintenance and utility costs. In addition, the order provided that if Elisha failed to reside in the new home for 180 consecutive days, then the home could be sold and the net proceeds of the sale would be divided between the parties in proportion to their contributions toward the purchase of the property.

On appeal, plaintiffs first contend that the trial court erred in refusing to transfer ownership of the new house to Elisha. According to plaintiffs, Elisha should have title to the property because the residence is a reasonable accommodation for which no-fault personal protection insurance benefits are payable under MCL 500.3107(1)(a); MSA 24.13107(1)(a). We reject this argument.

It is undisputed that the new house will provide reasonable and proper accommodations to Elisha, as required by MCL 500.3107(1)(a); MSA 24.13107(1)(a), and in addition will house the Kitchen family. As defendant notes, however, no one has ever suggested that it is necessary for Elisha's care that she hold legal title to the home in which she lives. We agree with defendant that as long as it satisfies its statutory obligation to pay for all reasonable charges incurred for those products, services, and accommodations reasonably necessary to meet Elisha's needs, defendant should be allowed to choose the least expensive adequate means of providing those items. This is completely consistent with the goal of the no-fault insurance system, which is to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses at the lowest cost to both the individual and the no-fault insurance system. See *Nelson v Transamerica Ins Services*, 441 Mich 508, 514; 495 NW2d 370 (1992). Ordering that Elisha have a life estate in a home that provides her with the necessary accommoda-

tions to meet her reasonable needs satisfies the requirements of MCL 500.3107(1)(a); MSA 24.13107(1)(a). Declining to award Elisha unencumbered legal title to a home in which defendant has a quarter-million-dollar investment simultaneously operates as a cost-containment measure that benefits the no-fault insurance system. Because both Elisha's needs and the goals of the no-fault act are met by holding the property in trust for Elisha during her lifetime, we find no error in the trial court's order.

Plaintiffs next claim that the trial court erred in ordering them to pay the cost of maintenance and utilities for the new home. Again, we disagree. Initially, we reject plaintiffs' argument that the court had no power to order them to bear those costs because the court lacked jurisdiction over them individually; a review of the record indicates that plaintiffs have remained parties in their individual capacities throughout this case. We also reject plaintiffs' argument that the provision runs afoul of the requirements of MCL 500.3107(1)(a); MSA 24.13107(1)(a) because it relieves defendant of the responsibility to maintain and keep the new residence habitable for Elisha. The order only relieves defendant of the responsibility of paying maintenance and utility bills while other members of the Kitchen family are living in the home with Elisha—once Elisha lives in the house with other caretakers, defendant must pay for all reasonable maintenance and utilities. The provision is thus consistent with defendant's obligation to Elisha. Moreover, there is nothing in the no-fault act that obligates defendant to pay the costs of housing members of the Kitchen family other than Elisha. We are satisfied that it is reasonable and consistent with the goals of the no-fault act to effectively provide that the Kitchen family pay "rent" in the

form of maintenance and utilities as long as they enjoy the benefits of living in the new home. Accordingly, we find no error in the trial court's order.

Finally, plaintiffs argue that the trial court erred in dismissing the claim by which they sought to have defendant pay medical expenses for Elisha in the event that Elisha is required to reimburse her health insurer, Sysco Frostpack, out of a possible third-party tort recovery. The argument is without merit. Plaintiffs purchased a coordinated policy from defendant, placing primary responsibility for Elisha's medical expenses upon Sysco. *Federal Kemper Ins Co, Inc v Health Ins Administration, Inc,* 424 Mich 537, 546; 383 NW2d 590 (1986). If a third-party tort action results in plaintiffs' recovery of previously paid medical expenses, then Sysco has a right to recoup its medical expenses from that recovery pursuant to MCL 500.3116(2); MSA 24.13116(2). However, reimbursement of Sysco for medical expenses comes from funds supplied by the third-party tortfeasor, not plaintiffs or Elisha. Any further reimbursement by defendant to plaintiffs would result in duplicative recovery. See *Great Lakes American Life Ins Co v Citizens Ins Co,* 191 Mich App 589; 479 NW2d 20 (1991). The trial court correctly refused to allow such a recovery.

Affirmed.