PAYNE v FARM BUREAU INSURANCE

Docket No. 249248. Submitted August 3, 2004, at Grand Rapids. Decided September 7, 2004, at 9:10 A.M.

Ronald Payne brought an action in the Allegan Circuit Court against Farm Bureau General Insurance of Michigan, seeking personal protection insurance benefits under an insurance policy issued pursuant to the no-fault automobile insurance act, MCL 500.3101 *et seq.*, after he was rendered a quadriplegic in an automobile accident. The defendant, among other things, agreed to pay for the construction of a new home for the plaintiff to meet his special housing needs, but required that it be allowed to have a security interest in the home for twenty years. The plaintiff moved for summary disposition, asserting that the defendant was not entitled to a security interest. The court, Harry A. Beach, J., granted the motion, ruling that the cost of the new home was a reasonable charge incurred for reasonably necessary accommodations for the plaintiff's care, but that the defendant was not entitled to a security interest in the new home. The defendant appealed.

The Court of Appeals *held*:

With respect to the extent that an insurer must supply housing to an injured insured under the no-fault insurance act, the focus of the inquiry is on the reasonableness of the accommodation in light of the act's public policy of providing sufficient housing at the lowest cost to the injured person and to the no-fault system. The defendant is reasonably entitled to a security interest where the security interest will be amortized over twenty years, after which time the plaintiff will receive title, and where it is unclear what equity the plaintiff has in his current home that will be applied toward the new home. Moreover, without the security interest, the plaintiff would be entitled to the entire net proceeds of the sale of the new home, and yet the defendant would still be liable under the no-fault act to construct another new home.

Reversed and remanded for further proceedings.

*Hann Persinger, P.C.* (by *Fernando L. Bedevia*), for the plaintiff.

*Jonathan Shove Damon* for the defendant.

Before: Whitbeck, C.J., and Owens and Schuette, JJ.

Per Curiam. Defendant appeals as of right from an order granting plaintiff partial summary disposition and a subsequent supplemental order granting plaintiff's motion for summary disposition in full pursuant to MCR 2.116(C)(9) and (10). The issue presented in this appeal arises out of defendant's assertion that it is entitled to maintain a security interest in a new home that was constructed to meet plaintiff insured's needs after he was injured in a car accident. The trial court determined that the new home was a reasonable expense and that plaintiff was entitled to sole title to the home unencumbered by any security interest of defendant. We reverse.

From the car accident, plaintiff sustained multiple injuries that included quadriplegia. He sued defendant for breach of an insurance contract pursuant to the Michigan no-fault automobile insurance act, MCL 500.3101 *et seq.*, alleging that defendant had unreasonably delayed or refused to pay personal protection insurance (PIP) benefits in violation of MCL 500.3142. The parties apparently resolved plaintiff's claims for PIP benefits except for certain issues regarding plaintiff's housing requirements. After determining that it would be more cost efficient to construct a new home for plaintiff rather than remodel his existing home, defendant secured a proposal from a builder to construct the home for $172,617.70. Plaintiff paid $4,500 to purchase the property on which the new house was to be constructed.

Sometime during the negotiations, defendant presented plaintiff with an accord and satisfaction agree-

ment, which provided that the money defendant expended for the construction of the home would be secured by its retaining a first priority lien on the home. The agreement further provided that the balance of the lien would be amortized over a twenty-year period that would commence upon the completion of the home, with the balance of the lien being reduced by five percent each year.[1] According to the agreement, the lien would be extinguished if plaintiff continued to reside in the home for the entire twenty-year period. However, the agreement set forth several triggering events, including plaintiff's changing his permanent residence, conveying or transferring any interest in the residence without defendant's written consent, or failure to maintain insurance or pay property taxes. If one of these triggering events were to occur, plaintiff would become liable for the amount of the lien that had not been amortized and, if plaintiff did not remit payment within one year of the triggering event, defendant could either seek payment from plaintiff or sell the residence.

The agreement also contained several restrictions on plaintiff's ability to transfer any interest in, or encumber, the residence and required plaintiff to hold harmless and indemnify defendant from any personal injury or property damage claims arising from the residence, pay many of the expenses associated with the residence, and maintain and provide proof of an "All Risk" home-

---

[1] The only issue before us is whether defendant is entitled to maintain a security interest in the home. We express no opinion with respect to the proposed terms of the security agreement. Reasonableness is generally a question of fact to be determined by the trier of fact. See *Williams v AAA Michigan,* 250 Mich App 249, 260-261; 646 NW2d 476 (2002), citing *Nasser v Auto Club Ins Ass'n,* 435 Mich 33, 55; 457 NW2d 637 (1990). Questions of material fact may not be decided when ruling on a motion for summary disposition. *Skinner v Square D Co,* 445 Mich 153, 161; 516 NW2d 475 (1994).

owner's insurance policy designating both plaintiff and defendant as beneficiaries. The agreement further provided that it would be binding on plaintiff, his heirs, successors, and assigns. Plaintiff did not sign the agreement.

Plaintiff moved for summary disposition, asserting that defendant was required to construct the home for plaintiff pursuant to MCL 500.3107(1)(a), which provided that a party may recover PIP benefits for "all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." He asserted that defendant was not entitled to retain any interest in the residence. Defendant responded that MCL 500.3107(1)(a) only prevented it from maintaining title; it did not prevent defendant from retaining a security interest in the home. Defendant argued that allowing plaintiff to obtain title to the home without allowing defendant to maintain a security interest provided plaintiff with a windfall in contravention of the purpose of the act, which was to "provide assured, adequate, and prompt reparations" to persons injured in automobile accidents "at the lowest cost to . . . the [injured persons] and the no-fault system." *Kitchen v State Farm Ins Co*, 202 Mich App 55, 58; 507 NW2d 781 (1993). Plaintiff countered that the home was a reasonable expense defendant was required to incur within the meaning of the statute, but defendant was trying to treat it as an investment.

After hearing the parties' arguments, the trial court stated that it believed there was a conflict between the cases that had been decided by this Court regarding an insurer's duty to provide accommodations. However, relying on MCL 500.3107(1)(a) and the most recent case decided by this Court at that time, the trial court

determined that defendant was not entitled to a security interest in the house and granted plaintiff's motion for summary disposition. Subsequent written orders effectuated the court's oral determination, and this appeal followed.

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Dressel v Ameribank,* 468 Mich 557, 561; 644 NW2d 151 (2003). A motion for summary disposition pursuant to MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings, and is appropriately granted where the defendant has failed to state a valid defense to a claim. *Slater v Ann Arbor Public Schools Bd of Ed,* 250 Mich App 419, 425-426; 648 NW2d 205 (2002). A defense to a claim is invalid for the purposes of MCR 2.116(C)(9) "when the defendant's pleadings are so clearly untenable that as a matter of law no factual development could possibly deny the plaintiff's right to recovery." *Id.* A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual sufficiency of the plaintiff's complaint. *Morris & Doherty, PC v Lockwood,* 259 Mich App 38, 42; 672 NW2d 884 (2003) (citation omitted). A motion for summary disposition is appropriately granted under MCR 2.116(C)(10) when, viewed in the light most favorable to the nonmoving party, the submitted evidence fails to establish a genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood,* 461 Mich 109, 120; 597 NW2d 817 (1999) (citations omitted). The parties' dispute in the present case arises from MCL 500.3107(1)(a) of the no-fault act, which provides in relevant part:

> [P]ersonal protection insurance benefits are payable for the following:

(a) Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation.

The two cases interpreting this statute, which the trial court found in conflict, are *Kitchen, supra,* and *Williams v AAA Michigan,* 250 Mich App 249; 646 NW2d 476 (2002). In *Kitchen,* the plaintiffs' six-year-old daughter Elisha was rendered quadriplegic in an automobile accident. *Id.* at 57. After Elisha's physicians predicted that she would need special long-term housing, the parties stipulated that the defendant would pay $17,332 to purchase property on which to construct a new home and $239,782.41 toward the home's construction, while the plaintiffs would contribute $68,561.41. *Id.* Respective ownership interests were reserved for later determination. *Id.* The trial court subsequently ordered that an independent trustee would hold title during Elisha's lifetime. *Id.* The plaintiffs were not required to contribute the equity from their existing home toward the new house, but were required to pay maintenance and utilities as long as a member of the Kitchen family other than Elisha lived in the new home, and were required to pay taxes and insurance in proportion to their contribution toward the purchase price. *Id.* The order further provided that if Elisha did not reside in the home for 180 consecutive days the house could be sold, and the net proceeds could be distributed to the parties in proportion to their respective contributions. *Id.* at 58.

The plaintiffs appealed, arguing that title should have been given to Elisha. *Id.* This Court held that defendant was permitted to choose the least expensive, adequate means to meet its statutory obligation under MCL 500.3107(1). *Id.* The panel concluded that Elisha's needs were adequately met by giving her a life estate in

the home, and that denying her unencumbered title to a home in which defendant had invested over $250,000 was a cost-containment measure benefiting the no-fault insurance system. *Id.* at 58-59.

The adult plaintiff in *Williams, supra* at 253, was also rendered quadriplegic after a car accident. After receiving an estimate for renovations to the plaintiff's split-level residence, the defendant declined to renovate it and instead decided to purchase and renovate a ranch style house. *Id.* at 254. The plaintiff sought summary disposition with respect to whether he or the defendant should retain title to the remodeled house. *Id.* The plaintiff argued that if the defendant retained title to the house, the defendant would eventually be able to sell the house and profit from the plaintiff's injury. *Id.* The defendant argued that the plaintiff was only entitled as a matter of law to a life estate under MCL 500.3107 and the public policy of minimizing expenses behind the no-fault act. The trial court granted the plaintiff's motion for summary disposition, finding that the plaintiff's situation was distinguishable from *Kitchen, supra* at 55, because the plaintiff was an adult that currently owned his own home and no family members would be living with him in the new home. *Williams, supra* at 256.

This Court upheld the trial court's decision, noting that the no-fault act did not specifically indicate to what extent an insurer must supply an insured with housing, but instead focused on reasonableness. *Id.* at 258. The panel noted that if the defendant had remodeled the home the plaintiff already owned, the plaintiff would clearly have retained title to the remodeled home. *Id.* at 259. Because the defendant refused to remodel the home the plaintiff already owned, and the plaintiff was willing to contribute the equity from the house he

already owned in order to maintain ownership of the new house, merely granting the plaintiff a life estate in the newly remodeled home was manifestly unreasonable. *Id.* at 259-260. The Court indicated in dicta that if the plaintiff had been unwilling to contribute the equity from the house he owned, it might have been unreasonable to give the plaintiff legal title to the new house. *Id.* at 260 n 3.

The *Williams* Court acknowledged the different holding in *Kitchen,* but indicated that the factual differences —the ages of the injured parties, previous ownership, and the willingness to contribute equity—compelled a different result. *Id.* at 263. Thus, it is obvious that resolution of the issue of reasonable accommodation is factually driven. The facts in the instant case contain similarities to and differences from both *Kitchen, supra,* and *Williams, supra.* Like the plaintiff in *Williams,* plaintiff here is an adult and is willing to contribute his existing equity toward remodeling his new home. However, unlike in *Williams,* plaintiff's equity is in unimproved land, and it is not clear whether plaintiff is being forced by defendant to leave his home. Although plaintiff lived in a house before the accident, he and his wife were divorced during the pendency of this action, and there is no indication whether plaintiff was awarded any interest in the house pursuant to the judgment of divorce. Thus, like the plaintiffs in *Kitchen,* plaintiff is willing to contribute to the new home but unwilling or unable to contribute equity from a home he currently owns.

Like the defendants in *Williams, supra,* and *Kitchen, supra,* defendant is remodeling a house different from the home that the injured insured lived in before the accident. But unlike the defendants in the previous cases, defendant here is seeking a security interest

rather than an ownership interest. With these differences in mind, we must determine whether the security interest sought by defendant is reasonable in light of the no-fault act's public policy of providing sufficient accommodations at the lowest possible cost to the system. *Kitchen, supra* at 58-59; *Williams, supra* at 258. Defendant's argument at trial and on appeal, which is not disputed by plaintiff, is that defendant is required to pay for plaintiff's housing for the rest of plaintiff's life; if plaintiff were to decide to move two years after the current house was remodeled, defendant would be required to remodel another house.

If this situation were to occur, we question whether any court would find the resulting expense reasonable. Nevertheless, without a security interest in the house currently in dispute, defendant would be unable to recoup and reinvest the funds expended on the current house toward remodeling the second house. Without a security interest held by defendant, plaintiff would be entitled to the entire net proceeds of the sale. Under these circumstances, we find that defendant is reasonably entitled to a security interest. While reasonableness of accommodations is generally a question for the fact-finder, if it can be stated with certainty that the accommodations are reasonable, a court can decide the issue as a matter of law. See *Williams, supra* at 260-261, citing *Nasser v Auto Club Ins Ass'n,* 435 Mich 33, 55; 457 NW2d 637 (1990).

Moreover, our decision—that granting defendant a security interest is reasonable—comports with both *Kitchen, supra,* and *Williams, supra.* In *Kitchen, supra* at 57-58, the trial court's order—that Elisha was entitled to a life estate, that legal title would be held by an independent trustee, and that the house would be sold and the proceeds distributed pro rata if Elisha vacated

the premises for more than 180 days—essentially granted the defendant a security interest similar to the security interest here. And our decision complies with *Williams, supra* at 260, because plaintiff will be given legal title to the home.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.