*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WELLESLEY GARDENS CONDOMINIUM
ASSOCIATION,

       Plaintiff-Appellant,

v

ASHISH P. MANEK, JAKER KIM, and RANA
SIM,

       Defendants-Appellees,

and

WASHTENAW COUNTY TREASURER,

       Intervening Defendant-Appellee.

UNPUBLISHED
January 9, 2020

No. 344190
Washtenaw Circuit Court
LC No. 17-000262-CH

Before: O'BRIEN, P.J., and GADOLA and REDFORD, JJ.

PER CURIAM.

Plaintiff, Wellesley Gardens Condominium Association (Wellesley), appeals as of right the order of the trial court quieting title in certain real property in favor of defendants, Jaker Kim, Rana Sim, and Ashish Manek. We reverse and remand.

## I. FACTS

This case involves the interests of the parties in certain real property, referred to as Units 210-427 and Units 165-167, which previously was part of a development known as Wellesley Gardens Condominium. The facts are essentially undisputed. The condominium was established on December 2, 2002, when a Master Deed was recorded by the original developer, Pittsfield Development Group, LLC (PDG). The Master Deed created 120 units within the condominium project, but reserved to PDG the right to expand the project to 426 units on land identified as "Area for Future Development." PDG thereafter expanded the condominium and created Units

-1-

121-209[1] by recording a Fourth Amendment to the Master Deed on June 17, 2004, and later a Fifth Amendment.

On May 26, 2005, PDG sold the Area for Future Development to Wellesley Building Company II, Inc. (WBC), together with a portion of its developer rights. On July 8, 2005, WBC recorded the Seventh Amendment of the Master Deed, expanding the development by adding land, and amending the legal description to establish Units 210-427. This amendment is the last recorded amendment expanding the condominium.

Although much of the infrastructure for building Units 210-427 was completed, those units were never constructed. When WBC failed to pay the real estate taxes on unbuilt Units 210-427, WBC's interest in the units was forfeited to the Washtenaw County Treasurer (the Treasurer) by a Judgment of Foreclosure in March 2009. The Treasurer then offered unbuilt Units 210-427 for sale at a public tax auction, and the units were purchased by Ibraheem Shunnar in the name of his minor daughter, Zena Shunnar (Shunnar). The Treasurer conveyed the interest in unbuilt Units 210-427 to Shunnar by quit claim deed recorded December 30, 2010.

On August 8, 2011, Wellesley sent a letter to Shunnar, asserting that on July 8, 2011, unbuilt Units 210-427 became general common elements of the condominium by operation of §67(3) of the Condominium Act, MCL 559.167(3). That statutory section, as it existed on July 8, 2011, establishes a time frame within which the optional units of a condominium must be built, providing that if the developer does not construct the units or withdraw the undeveloped portions of the project before the expiration date "those undeveloped lands shall remain part of the project as general common elements and all right to construct units upon that land shall cease." MCL 559.167(3). Wellesley similarly advised the Pittsfield Charter Township Assessor that the unbuilt units had been converted to general common elements by operation of law, and requested that the unbuilt units be removed from the tax rolls. On August 18, 2011, Wellesley recorded the Eighth Amendment to the Master Deed, providing notice that Units 210-427 had been eliminated from the condominium project by operation of law.

Shunnar initiated a lawsuit against Wellesley in August 2013, seeking declaratory judgment and to quiet title to Units 210-427 in Shunnar's favor. Wellesley moved for summary disposition in that action, asserting that under MCL 559.167(3), Units 210-427 were required to have been built, or the undeveloped portions withdrawn from the project, by July 8, 2011. Wellesley contended that because the units were neither built nor withdrawn from the project by that date, the units ceased to exist and the land on which they could have been developed became general common elements of the condominium by operation of law. Shunnar also moved for summary disposition, arguing that the units purchased at a tax foreclosure sale could not be destroyed by MCL 559.167(3) and that Shunnar's claim to title was superior to Wellesley's claim. The circuit court granted Wellesley declaratory judgment and quieted title to Units 210-427 in favor of Wellesley, holding that MCL 559.167 precluded Shunnar from successfully asserting any claim to the units because the units had ceased to exist by operation of that statute.

---

[1] Although the Fourth Amendment to the Master Deed states that it adds Units 121-217, this apparently was later corrected by the Fifth Amendment to add only Units 121-209.

See *Zis Land Co, LLC v Wellesley Gardens Condominium Ass'n*, Washtenaw Circuit Court No. 13-813-CH (November 20, 2014).

After the circuit court issued its opinion and order in *Zis Land Co*, Shunnar failed to pay the property taxes on unbuilt Units 210-427, and the Treasurer foreclosed in 2015. Wellesley submitted a protest in the tax foreclosure case, advising the parties of the *Zis Land Co* decision and arguing that Units 210-427 had ceased to exist. The circuit court in the foreclosure action entered orders of foreclosure. After obtaining title to the units through foreclosure, the Treasurer sold Units 210-427 to defendants Sim and Kim in 2015, executing a quit claim deed.

Meanwhile, Units 165-167 also had never been constructed. Units 165-167 were acquired by First State Bank of Northwest Arkansas, later succeeded by Today's Bank. The bank failed to pay the real estate taxes on Units 165-167 in 2013 and 2014, resulting in the Treasurer bringing foreclosure proceedings on those unbuilt units in 2015. In the foreclosure case, Wellesley submitted a protest, arguing that Units 165-167 had ceased to exist by operation of MCL 559.167, because more than six years had elapsed since July 8, 2005. The circuit court entered an order of foreclosure in February 2016. After obtaining title to the units through foreclosure, the Treasurer sold Units 165-167 to Manek on October 13, 2016, executing a quit claim deed.

On March 29, 2017, Wellesley initiated this action, seeking to quiet title to former Units 165-167 against Manek, to quiet title to former Units 210-427 against Sim and Kim, and seeking declaratory judgment as to all defendants. The trial court thereafter permitted the Treasurer to intervene as a defendant.

Wellesley moved for summary disposition under MCR 2.116(C)(9) and (10), and defendants moved for summary disposition under MCR 2.116(C)(8) and (10). After a hearing on all motions, the trial court granted summary disposition in favor of defendants, and entered an order quieting title as to Units 165-167 in favor of Manek and as to Units 210-427 in favor of Sim and Kim. Wellesley now appeals to this Court.

## II. DISCUSSION

### A. STANDARDS OF REVIEW AND SUMMARY DISPOSITION STANDARDS

This Court reviews de novo a trial court's decision to grant or deny summary disposition. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). A motion for summary disposition pursuant to MCR 2.116(C)(8) tests the legal sufficiency of the complaint, viewing all well-pleaded facts as true and construing them in a light most favorable to the nonmovant. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A motion for summary disposition under this section is properly granted when, considering only the pleadings, the alleged claims are clearly unenforceable as a matter of law and no factual development could justify recovery. *Id*. A motion for summary disposition under MCR 2.116(C)(9) tests the sufficiency of the defendant's pleadings, and is properly granted when a defendant fails to state a valid defense to a claim, *Payne v Farm Bureau Ins*, 263 Mich App 521, 525; 688 NW2d 327 (2004), and when no development of the facts could support denial of the plaintiff's right to recovery. *Slater v Ann Arbor Pub Sch Bd*, 250 Mich App 419, 425-426; 648 NW2d 205 (2002).

Summary disposition pursuant to MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Maiden*, 461 Mich 120. When reviewing an order issued pursuant to MCR 2.116(C)(10), this Court considers all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Id*.

In an action to quiet title, this Court reviews de novo both legal and equitable claims, while reviewing the trial court's factual findings for clear error. *Jonkers v Summit Twp*, 278 Mich App 263, 265; 747 NW2d 901 (2008). A finding is clearly erroneous if it is unsupported in the record or if, on the entire record, this Court is left with a definite and firm conviction that the trial court made a mistake. *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 31; 896 NW2d 39 (2016). This Court also reviews de novo the application of the legal doctrine of res judicata. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). Questions of statutory interpretation are also reviewed de novo. *Peterson v Magna Corp*, 484 Mich 300, 306; 773 NW2d 564 (2009).

## B. THE CONDOMINIUM ACT

Wellesley contends that the trial court erred in quieting title in favor of Sim and Kim and Manek because MCL 559.167(3) extinguished the existence of any property interest in the unbuilt units. We agree.

In a quiet title action, the plaintiff bears the burden of establishing a prima facie case of title to the property in question. *Special Prop VI LLC v Woodruff*, 273 Mich App 586, 590; 730 NW2d 753 (2007). Once the plaintiff has established a prima facie case of title, the defendant must then prove his or her superior right of title to prevail. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Road Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999).

In this case, Wellesley presented sufficient evidence to establish a prima facie case of title to the land that had been designated as the location for the unbuilt units. On July 8, 2011, and until its amendment effective September 21, 2016, MCL 559.167(3) provided as follows:

> (3) Notwithstanding section 33, if the developer has not completed development and construction of units or improvements in the condominium project that are identified as "need not be built" during a period ending 10 years after the date of commencement of construction by the developer of the project, the developer, its successor, or assigns have the right to withdraw from the project all undeveloped portions of the project not identified as "must be built" without the prior consent of any co-owners, mortgagees of units in the project, or any other party having an interest in the project. If the master deed contains provisions permitting the expansion, contraction, or rights of convertibility of units or common elements in the condominium project, then the time period is **6 years after the date the developer exercised its rights with respect to either expansion, contraction, or rights of convertibility, whichever right was exercised last.** The undeveloped portions of the project withdrawn shall also automatically be granted easements for utility and access purposes through the condominium project for the benefit of

-4-

the undeveloped portions of the project. **If the developer does not withdraw the undeveloped portions of the project from the project before expiration of the time periods, those undeveloped lands shall remain part of the project as general common elements and all right to construct units upon that land shall cease.** In such an event, if it becomes necessary to adjust percentages of value as a result of fewer units existing, a co-owner or the association of co-owners may bring an action to require revisions to the percentages of value under section 95. [Emphasis added.]

Under MCL 559.167(3) as in effect on July 8, 2011, any optional unbuilt units were required to be built, or the undeveloped portions withdrawn from the project, within six years after the developer exercised its rights "to either expansion, contraction, or rights of convertibility, whichever was exercised last." If optional units were not built within the time allotted by the statute nor the land timely withdrawn from the project, the undeveloped portions remained part of the project as general common elements and all right to construct units upon that land ceased. MCL 559.167(3) thus contemplated a firm end date to the completion of a condominium project, thereby providing condominium associations with a necessary tool for completion of development and for long-term financial planning. As this case illustrates, however, the elimination of property interests in unbuilt condominium units by operation of law under MCL 559.167(3) sometimes created problems for developers, taxing officials, and unwary purchasers.

In this case, the developer last exercised it rights to expansion on July 8, 2005, when WBC recorded the Seventh Amendment to the Master Deed. The parties do not dispute that the units in question were not designated as "must be built" units, and also do not dispute that the units were neither built nor the undeveloped portions withdrawn from the project before July 8, 2011. Therefore, by operation of MCL 559.167(3), as in effect on July 8, 2011, the undeveloped land on which the unbuilt units were to be built became part of the general common elements and all right to construct the unbuilt units ceased on that date.

Effective September 21, 2016, the Legislature amended MCL 559.167, by way of 2016 PA 233. As amended, that statutory section provides, in relevant part:

(3) Notwithstanding section 33, for 10 years after the recording of the master deed, the developer, its successors, or assigns may withdraw from the project any undeveloped land or convert the undeveloped condominium units located thereon to "must be built" without the prior consent of any co-owners, mortgagees of the condominium units in the project, or any other party having an interest in the project. If the master deed confers on the developer expansion, contraction, or convertibility rights with respect to condominium units or common elements in the condominium project, then the time period is 10 years after the recording of the master deed or 6 years after the recording of the amendment to the master deed by which the developer last exercised its expansion, contraction, or convertibility rights, whichever period ends later. Any undeveloped land so withdrawn is automatically granted easements for utility and access purposes through the condominium project for the benefit of the undeveloped land.

(4) If the developer does not withdraw undeveloped land from the project or convert undeveloped condominium units to "must be built" before expiration of the applicable time period under subsection (3), the association of co-owners, by an affirmative 2/3 majority vote of the members in good standing, may declare that the undeveloped land shall remain part of the project but shall revert to general common elements and that all rights to construct condominium units upon that undeveloped land shall cease. When such a declaration is made, the association of co-owners shall provide written notice of the declaration to the developer or any successor developer by first-class mail at its last known address. Within 60 days after receipt of the notice, the developer or any successor developer may withdraw the undeveloped land or convert the undeveloped condominium units to "must be built." However, if the undeveloped land is not withdrawn or the undeveloped condominium units are not converted within 60 days, the association of co-owners may file the notice of the declaration with the register of deeds. The declaration takes effect upon recording by the register of deeds. The association of co-owners shall also file notice of the declaration with the local supervisor or assessing officer. . . .

(5) A reversion under subsection (4), whether occurring before or after the date of the 2016 amendatory act that added this subsection, is not effective unless the election, notice, and recording requirements of subsection (4) have been met.

(6) Subsections (3) and (4) do not apply to condominium units no longer owned by the developer or by the owner of the property at the time the property became part of the condominium project, unless the purchaser from the developer or owner of the property at the time the property became part of the condominium project is a successor developer under section 135. [MCL 559.167, as amended by 2016 PA 233, effective September 21, 2016.]

The Legislature, by amending MCL 559.167, changed the process by which "need not be built" units are eliminated from a condominium project. As amended, the statute now includes a process by which the co-owners of a condominium are obligated to notify the developer when the co-owners have approved reversion of land planned for unbuilt units. Only if the developer fails to withdraw the land or amend the master deed after notice and within the time provided by the amended statute, and upon filing with the register of deeds, does the land revert to the condominium as common elements. See MCL 559.167, as amended by 2016 PA 233.

In this case, Sim and Kim contend that the 2016 amendment to MCL 559.167 applies retroactively, and when applied retroactively precludes Units 210-427 from reverting to general common elements of the condominium. We disagree. This Court recently determined in *Cove Creek Condo Ass'n v Vistal Land & Home Development, LLC*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket Nos. 342372, 343144); slip op at 9-10, that the 2016 amendment to MCL 559.167 does not apply retroactively with regard to transfers completed before the amendment's effective date, stating that "nothing suggests that completed transfers under the earlier versions of the statute are to be reversed." This Court reasoned that the language of the amendment does not expressly provide for retroactive application and that in any event the

amendment cannot be applied retroactively if to do so would abrogate vested rights. *Id*. at ___; slip op at 10.

In this case, MCL 559.167(3), before the 2016 amendment, created in condominium co-owners an interest in lands that remained in the general common elements. As a result, the co-owners of Wellesley Garden Condominium, on July 8, 2011, became vested in the land on which the unbuilt units were never built. Because 2016 PA 233 is a substantive change to the Condominium Act that would impair these vested rights if applied retroactively, the 2016 amendment to MCL 559.167, does not apply retroactively in this case. See *Cove Creek*, ___ Mich App at ___; slip op at 9-10. Rather, in this case, by operation of MCL 559.167(3), as in effect on July 8, 2011, the undeveloped land on which the unbuilt units were to be built became part of the general common elements and all right to construct the unbuilt units ceased on that date.

## C. PRECLUSIVE EFFECT OF *ZIS LAND CO*

Wellesley also contends that the trial court in this case erred because the circuit court's opinion in *Zis Land Co*, which determined that Units 210-427 ceased to exist by operation of law and quieted title to those units in favor of Wellesley, precludes Kim, Sim, and the Treasurer from litigating in this action the existence and ownership of former Units 210-427. We agree.

Res judicata, also known as claim preclusion, bars the subsequent relitigation of a claim that is predicated on the same underlying transaction litigated in a prior case. *Duncan v Michigan*, 300 Mich App 176, 194; 832 NW2d 761 (2013). The purpose of the doctrine of res judicata is to relieve parties of the cost and vexation of multiple lawsuits, to conserve judicial resources, and to foster the finality of litigation by encouraging reliance on adjudication. *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 715; 848 NW2d 482 (2014). Res judicata is broadly applied in Michigan to bar not only claims already litigated, but also claims arising from the same transaction that the parties, exercising reasonable diligence, could have raised. *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999).

The elements of res judicata are that (1) the prior action was decided on the merits, (2) the judgment in the prior action was a final decision, (3) the matter contested in the second action was or could have been resolved in the first case, and (4) both actions involved the same parties or their privies. *Richards v Tibaldi*, 272 Mich App 522, 531; 726 NW2d 770 (2007). To establish privity, there must be a substantial identity of interest between the party and the nonparty in which the interests of the nonparty were presented and protected by the party. *Adair v Michigan*, 470 Mich 105, 122; 680 NW2d 386 (2004). Parties are in privity when they are "so identified in interest with another party that the first litigant represents the same legal right that the later litigant is trying to assert." *Id*. The burden of establishing the elements of res judicata is upon the party asserting the doctrine. *Baraga Co v State Tax Comm*, 466 Mich 264, 269; 645 NW2d 13 (2002).

The circuit court's decision in *Zis Land Co* was both a judgment quieting title and a declaratory judgment. The purpose of an action to quiet title is to determine which party among competing parties has the superior interest in real property. *Trademark Properties of Michigan,*

*LLC v Fed Nat Mortgage Ass'n*, 308 Mich App 132, 141; 863 NW2d 344 (2014). The court rule addressing quiet title actions is MCR 3.411, see *Richards*, 272 Mich App at 532; and provides:

> Except for title acquired by adverse possession, the judgment determining a claim to title, equitable title, right to possession, or other interests in lands under this rule, determines only the rights and interests of the known and unknown persons who are parties to the action, and of persons claiming through those parties by title accruing after the commencement of the action. [MCR 3.411(H).]

In *Richards*, this Court considered the interplay of the doctrine of res judicata and MCR 3.411(H) when the prior action was one to quiet title, and suggested that when the prior action was a quiet title action, res judicata applies if, in addition to demonstrating the elements of res judicata, MCR 3.411(H) also is satisfied by the defendants being either parties to the prior action or persons claiming through those parties by title accruing after the commencement of the prior action. If the criteria of MCR 3.411(H) are met, as well as the elements of res judicata, res judicata applies to preclude relitigation of the right to title. See *Richards*, 272 Mich App at 533.

Here, the circuit court opinion in *Zis Land Co* quieted title in Units 210-427 in favor of Wellesley as against Shunnar. After that litigation was completed, Shunnar failed to pay the property taxes and the Treasurer foreclosed upon Units 210-427 and obtained a judgment awarding it title to those units. The Treasurer thereafter conveyed its interest in the unbuilt units to Sim and Kim by quit claim deed. The Treasurer, and then Sim and Kim, thus ostensibly took title to Units 210-427 after the commencement of the *Zis Land Co* action, by foreclosing Shunnar's interest.

Turning to the elements of res judicata, the parties do not dispute that the prior action was decided on the merits, and that the judgment was a final decision. See MCR 2.605(E) (declaratory judgments have the force and effect of final judgments). With respect to whether the matter contested in the second action was or could have been resolved in the first case, the contested matter in both actions is the same, being whether Units 210-427 ceased to exist by operation of law after July 8, 2011. With respect to privity, in *Zis Land Co* the parties were Wellesley and the business entity holding Shunnar's interest. In this case, the relevant parties are Wellesley, and Sim and Kim, who claim to hold the same interest in Units 210-427 formerly held by Shunnar. Sim and Kim are thus so identified in interest with Shunnar that Shunnar represented the same legal right that Sim and Kim now assert, being the ownership right in unbuilt Units 210-427. See *Duncan*, 300 Mich App at 195. The elements of res judicata thus are met.

However, even if the requirements of MCR 3.411(H) were not met in this case, res judicata nonetheless would apply because the circuit court in *Zis Land Co*, in addition to quieting title in favor of Wellesley, also issued a declaratory judgment determining that as of July 8, 2011, Units 210-427 no longer existed, and any property interest reverted to Wellesley by operation of law. In Michigan, declaratory judgment is governed by MCR 2.605, which authorizes a Michigan court to declare the rights and legal relations of an interested party seeking the declaratory judgment. The purpose of a declaratory judgment action is "to enable the parties to obtain adjudication of rights before an actual injury occurs, to settle a matter before it ripens into a violation of the law or a breach of contract, or to avoid multiplicity of actions by affording

a remedy for declaring in expedient action the rights and obligations of all litigants." *UAW v Central Michigan Univ Trustees*, 295 Mich App 486, 496; 815 NW2d 132 (2012) (quotation marks and citation omitted). "A declaratory judgment is a procedural remedy that constitutes a binding and conclusive adjudication of the rights and status of the litigants." *Associated Builders & Contractors v Dep't of Consumer & Indus Servs Director*, 472 Mich 117, 124; 693 NW2d 374 (2005), overruled in part on other grounds in *Lansing Sch Ed Ass'n v Lansing Bd of Ed*, 487 Mich 349, 371 n 18; 792 NW2d 686 (2010).

In *Zis Land Co*, the circuit court granted Wellesley declaratory judgment, holding that MCL 559.167(3) precluded Shunnar from successfully asserting any claim to unbuilt Units 210-427 because by operation of law the units ceased to exist on July 8, 2011, and the undeveloped land on which the prospective units had been planned to be built became part of the general common elements of the condominium. Res judicata therefore applies to preclude relitigation of the existence of Units 210-427, and Sim and Kim are precluded by res judicata from asserting an ownership interest in Units 210-427 in this subsequent litigation.

## D.  WELLESLEY WAS NOT REQUIRED TO "PERFECT" ITS INTEREST

Sim and Kim and the Treasurer also contend that Wellesley did not record its interest in Units 210-427, and therefore is now estopped from asserting an interest in the units. This contention is without merit. Although MCL 559.167, as amended by 2016 PA 233, places certain burdens upon the condominium co-owners to provide notice of the reversion of undeveloped property, the version of the statute in effect at the times relevant here operated automatically without need for any further action by the co-owners. See *Cove Creek*, ___ Mich App at ___; slip op at 10-11. Moreover, Wellesley does not claim an ownership interest in the unbuilt units; it contends that any interest in the unbuilt units ceased to exist on July 8, 2011. Because Wellesley had no interest to perfect, and no obligation to take any other action under MCL 559.167 with regard to the unbuilt units or the undeveloped land, this argument fails.

## E.  THE TAX SALES DID NOT EXTINGUISH WELLESLEY'S RIGHTS

The Treasurer argues that any property interest that Wellesley may have had in Units 210-427 and Units 165-167 was extinguished by the tax foreclosure sales in which Sim and Kim and Manek purchased the units from the Treasurer. We disagree, for the reason that before the foreclosure actions all property interests in the unbuilt units had ceased to exist.

Section 78k of the General Property Tax Act (GPTA), MCL 211.78k(5)(e) describes the interests in real property that remain after a tax foreclosure sale:

(e) That all existing recorded and unrecorded interests in that property are extinguished, except a visible or recorded easement or right-of-way, private deed restrictions, interests of a lessee or an assignee of an interest of a lessee under a recorded oil or gas lease, interests in oil or gas in that property that are owned by a person other than the owner of the surface that have been preserved as provided in section 1(3) of 1963 PA 42, MCL 554.291, interests in property assessable as personal property under section 8(g), or restrictions or other governmental interests imposed pursuant to the natural resources and environmental protection

act, 1994 PA 451, MCL 324.101 to 324.90106, if all forfeited delinquent taxes, interest , penalties, and fees are not paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under this section, or in a contested case within 21 days of the entry of a judgment foreclosing the property under this section.

The Treasurer argues that the purchase of the units by Sim and Kim and Manek at the tax sales thus extinguished any interest in the units held by Wellesley. However, Sim and Kim and Manek purchased their respective unbuilt units at tax sales occurring *after* July 8, 2011, the date on which MCL 559.167(3) operated to extinguish the existence of any interest in the units. The foreclosures and tax sales did not somehow revive the units to give Sim and Kim and Manek interests that had previously extinguished. There were no "existing recorded and unrecorded interests in that property" to be extinguished, and MCL 211.78k(5)(e) therefore did not provide the function of extinguishing any rights. Moreover, we note that Wellesley never claimed an interest in the unbuilt units, only in the land on which the unbuilt units were proposed to be built. As a result, the argument that any property interest that Wellesley may have had in Units 210-427 and Units 165-167 was extinguished by the tax foreclosure sales is without merit. Wellesley did not have, and did not claim to have, an interest in the unbuilt units.

The Treasurer also argues that if the units do not exist, as Wellesley contends, then Wellesley lacks standing to bring this action because there is no case or controversy. This argument is without merit. The purpose of an action to quiet title is to remove a cloud from a title to real property; an action to quiet title may be brought by a person who claims an interest in land against a person claiming an inconsistent interest. See MCL 600.2932; *Adams v Adams*, 276 Mich App 704, 712, 712 n 2; 742 NW2d 399 (2007). In this case, Wellesley claims an interest in the undeveloped lands upon which the unbuilt units were planned to be built; defendants' claim of ownership in the unbuilt units, and of the right to build the units, is an interest inconsistent with Wellesley's interest in the undeveloped land. Wellesley is therefore entitled to bring an action for quiet title and declaratory judgment regarding that interest.

F. UNITS 165-167

Manek argues that the trial court did not err in quieting title to Units 165-167 in his favor because on July 8, 2011, Units 165-167 were not owned by the developer or its successor or assign, and MCL 559.167(3) therefore did not operate to extinguish the owner's property interest in those units. In other words, Manek argues that the statute only affects units owned by a developer, not those owned by non-developers. Manek argues that on July 8, 2011, Units 165-167 were owned by First State Bank, which was neither a developer, nor a successor or assign of the developer. Manek references §135(1) of the Condominium Act, MCL 559.235(1), which defines a successor developer as "a person who acquires title to the lesser of 10 units or 75% of the units in a condominium project, other than a business condominium project, by foreclosure, deed in lieu of foreclosure, purchase, or similar transaction." Here, there is no evidence that First State Bank acquired more than Units 165-167, and therefore was not a successor developer. Manek suggests that because Units 165-167 were not owned by a developer, §67(3) did not extinguish the existence of those units. We disagree.

MCL 559.167(3), at the times relevant to this case, permitted the developer of the project, and its successors or assigns, to withdraw undeveloped portions from the project. That statutory section provided that "[i]f the developer does not withdraw the undeveloped portions of the project from the project before expiration of the time periods, those undeveloped lands shall remain part of the project as general common elements and all right to construct units upon that land shall cease." Nothing in MCL 559.167(3), however, states that the owner of the unbuilt units must be a "developer" at the time the applicable period expires for this provision to take effect.

When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature. *City of Coldwater v Consumers Energy Co*, 500 Mich 158, 167; 895 NW2d 154 (2017). The best indication of the intent of the Legislature is the plain meaning of the statute's clear and unambiguous language. See *Deruiter v Byron Twp*, 325 Mich App 275, 283; 926 NW2d 268 (2018). When statutory language is clear, the intent of the Legislature is clear and this Court enforces the statute as written. *Id*.

In this case, the language of MCL 559.167(3) is clear and without ambiguity. The statute grants the developer the ability to withdraw undeveloped portions of the project before the expiration of the time periods established by that statutory section. The statute does not state that unbuilt units owned by someone other than a developer are not subject to this provision, nor that ownership of the units by the developer is a prerequisite to the operation of MCL 559.167(3). Thus, the ownership of units 165-167 by a non-developer did not preclude the operation of the statute to extinguish the property interests in those unbuilt units.

## G. EQUITY

We also reject defendants' argument that Wellesley acted in bad faith and therefore is equitably estopped from seeking to quiet title to the units. One who seeks equity from the court must have clean hands. See *Rose v Nat'l Auction Group*, 466 Mich 453, 462; 646 NW2d 455 (2002). The clean hands doctrine applies to actions to quiet title. *McFerren v B&B Investment Group*, 253 Mich App 517, 523; 655 NW2d 779 (2002). We review de novo both legal and equitable claims in an action to quiet title, while reviewing the trial court's factual findings for clear error. *Jonkers*, 278 Mich App at 265. Whether equitable relief is warranted under the facts is reviewed de novo. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008).

In this case, there has been no demonstration that Wellesley has unclean hands. Although the Treasurer argues that Wellesley acted with unclean hands by failing to pay property taxes on the unbuilt units, nothing in the record establishes that Wellesley owed an obligation to pay the taxes on the unbuilt units, which it never owned. The Treasurer also argues that Wellesley did not inform Shunnar that unbuilt Units 210-427 would be extinguished by MCL 559.167(3) until after that event occurred. Again, the record does not establish that Wellesley had any obligation to do so; the statute as it existed at the times relevant to this case imposed no such obligation on Wellesley. Moreover, the balancing of any equities between Wellesley and Shunnar already occurred in the prior litigation in *Zis Land Co*, wherein the circuit court determined that Wellesley was entitled to the equitable relief of quiet title.

We also observe that with regard to the purchases of the unbuilt units by Sim and Kim and Manek, there is no evidence that Wellesley encouraged those purchases or profited in any way from the purchases. Rather, the purchase of those units served to cloud Wellesley's interest in the undeveloped land upon which the units had been planned to be built, and Wellesley urged the Treasurer not to sell the unbuilt units at the tax sales because of Wellesley's competing interest. Only the taxing authority appears to have gained anything from the unwary defendants who purchased the unbuilt units by paying the outstanding property taxes.

In sum, the record contains no evidence that Wellesley acted inequitably or in bad faith. On August 18, 2011, Wellesley recorded the Eighth Amendment to the Master Deed, providing notice that Units 210-427 had been eliminated from the condominium project by operation of law. Wellesley repeatedly advised the Treasurer that unbuilt Units 210-427 and Units 165-167 had ceased to exist and that the land on which the units were to have been built had become general common elements of the condominium, and that with regard to former Units 210-427, a judgment existed declaring that the units had been extinguished. The Treasurer nonetheless proceeded with the tax sales to Sim and Kim and to Manek. Because the record does not support the argument that Wellesley engaged in any conduct that could be described as "unclean hands," there is no ground to deny equitable relief.

CONCLUSION

We conclude that the trial court erred in quieting title in favor of Sim and Kim and Manek because MCL 559.167(3), before amendment by 2016 PA 233, operated to extinguish the existence of any property interest in the unbuilt units. The trial court also erred in quieting title to unbuilt Units 210-427 because res judicata precludes the relitigation of title to the former units, which was already adjudicated in *Zis Land Co*. In addition, Wellesley did not engage in any misconduct that would warrant the denial of equitable relief.

Reversed and remanded for entry of judgment in favor of Wellesley. We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Michael F. Gadola
/s/ James Robert Redford

-12-